[No. S094039. June 13, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT GENE SINOHUI, Defendant and Appellant

**COUNSEL**

Sharon M. Jones and Diane Nichols, under appointments by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner and Robert R. Anderson, Chief Assistant Attorneys General, Gary W. Schons, Assistant Attorney General, Laura Whitcomb Halgren, Robert M. Foster and Angela K. Rosenau, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN, J.**—California recognizes two marital privileges. First, a spouse may refuse to testify against the other spouse (spousal testimony privilege). (Evid. Code, § 970.) Second, a spouse may refuse to disclose or may prevent the other spouse from disclosing confidential communications between them during their marriage (marital communications privilege). (Evid. Code, § 980.) Despite recognizing these privileges, the Legislature has enacted numerous exceptions. (See Evid. Code, §§ 972, 985.) Today, we consider the scope of one of the exceptions common to both marital privileges in the context of the spousal testimony privilege.

In this case, defendant Robert Gene Sinohui contends the trial court erroneously compelled his wife to testify about his crimes against a third person pursuant to the exception to the spousal testimony privilege codified in Evidence Code section 972, subdivision (e)(2) (section 972(e)(2)). As relevant here, section 972(e)(2) precludes a wife from asserting the spousal testimony privilege in "[a] criminal proceeding in which" the husband "is charged with: [¶] . . . [¶] . . . [a] crime against the person or property of a third person committed in the course of committing a crime against the person or property of" his wife. According to defendant, this exception did not apply because the accusatory pleading did not charge defendant with a crime against his wife and because he did not commit the crimes against the third person "in the course of committing" a crime against his wife. We disagree and affirm the trial court's ruling.

## FACTS

Prior to marrying defendant, Gina Loiaza had dated Gabriel Terrazas, the victim, for about a year. At some point during the marriage, Loiaza began to see Terrazas again. Loiaza and Terrazas were "close friends" and would meet to "talk and kiss." Loiaza never told defendant about her relationship with Terrazas because she did not believe he would approve and because "he was possessive."

One evening, Loiaza met Terrazas at his home. After a brief stay, they left in her car for a secluded spot in an industrial complex nearby. A few minutes later, they noticed a car behind them. This other car eventually pulled alongside their car, and the driver pointed a gun at Loiaza. Loiaza stopped her car and got out. Two men got out of the other car and ordered Terrazas out of Loiaza's car. As one of the men tried to force Terrazas into the trunk of Loiaza's car, the other man grabbed Loiaza and pushed her out of the way so she could not see Terrazas. At some point, Loiaza recognized defendant

as one of the two men and the other car as belonging to defendant's sister-in-law. After hearing and seeing a brief struggle and hearing a gunshot, Loiaza saw Terrazas in the trunk of her car. Defendant then drove away in Loiaza's car with Terrazas in the trunk, and left Loiaza with the other man.

Loiaza told the other man she was going to drive home and got into the car left by defendant. The other man got into the passenger seat, and Loiaza drove to the apartment she shared with defendant. When they arrived, defendant was standing outside. Ignoring defendant, Loiaza ran into the apartment, where she saw defendant's sister-in-law. Loiaza then checked on her children and fell asleep on the couch. Although Loiaza dozed "on and off," she saw defendant dressed in several different sets of clothes. During the night, she also saw him wash her car and hand his sister-in-law a bag of clothes.

Early the next morning, defendant woke Loiaza and told her they had to "go for a ride." Loiaza agreed because she was afraid and did not want to upset defendant. Defendant, Loiaza, their three children, and the man who had helped defendant abduct Terrazas got into Loiaza's car. When Loiaza got in, defendant told her Terrazas was in the trunk. Defendant then drove them to a drainage ditch. Defendant and the other man got out of the car and unloaded something. They told Loiaza not to look. Although Loiaza stayed in the car and could not see what was being unloaded, she assumed it was Terrazas's body.

After they returned to the apartment, defendant washed the car again. He then told Loiaza to get gas and told the other man to accompany her. At the gas station, Loiaza noticed blood and water leaking from the trunk.

The next day, defendant and Loiaza left their apartment with their children but without most of their belongings. That same day, a high school student discovered Terrazas's body in a drainage ditch. An autopsy of Terrazas's body revealed multiple bruises, 43 stab wounds and one gunshot wound to the neck. A forensic analysis of the trunk of Loiaza's car uncovered bloodstains consistent with Terrazas's—but not defendant's—blood type.

After leaving their apartment, defendant and Loiaza stayed with various friends and relatives. The police eventually arrested defendant, 25 days after discovering Terrazas's body. The information charged defendant with kidnapping and murdering Terrazas (Pen. Code, §§ 187, subd. (a), 207, subd. (a)), but did not charge him with any crimes against Loiaza. The information also alleged enhancements for use of a firearm and knife in the commission

of murder (Pen. Code, §§ 1192.7, subd. (c)(8), 12022, subd. (b)(1)), and a prior felony conviction (Pen. Code, § 667.5, subd. (b)).

As the only available eyewitness to the events surrounding Terrazas's kidnapping and murder, Loiaza was the main witness against defendant. Before trial, Loiaza asserted the spousal testimony privilege and refused to testify. (See Evid. Code, § 970.) The trial court, however, compelled her testimony pursuant to the exception to the privilege codified in section 972(e)(2). A jury found defendant guilty of murder and kidnapping but acquitted him of the enhancements. After finding the prior conviction allegation to be true, the court sentenced defendant to 26 years to life. Defendant appealed, contending, among other things, that the court erroneously compelled his wife's testimony.[1]

The Court of Appeal reversed. Concluding that Terrazas—and not Loiaza —was the "primary victim" of defendant's crimes, the court held that section 972(e)(2) did not apply. Because Loiaza's testimony was critical, the court found the erroneous introduction of her testimony prejudicial, and did not reach any other issues. We granted review to determine whether the exception to the spousal testimony privilege contained in section 972(e)(2) applies in this case and conclude it does.

DISCUSSION

I

The rule prohibiting a spouse from testifying against another spouse has a long history. It originated in medieval times and apparently "sprang from two canons of medieval jurisprudence: first, the rule that an accused was not permitted to testify in his own behalf because of his interest in the proceeding; second, the concept that husband and wife were one, and that since the woman had no recognized separate legal existence, the husband was that one. From those two now long-abandoned doctrines, it followed that what was inadmissible from the lips of the defendant-husband was also inadmissible from his wife." (*Trammel v. United States* (1980) 445 U.S. 40, 44 [100 S.Ct. 906, 909, 63 L.Ed.2d 186] (*Trammel*); see also Medine, *The Adverse Testimony Privilege: Time to Dispose of a "Sentimental Relic"* (1988) 67 Or. L.Rev. 519, 522-523 [discussing different accounts of how the spousal testimony privilege arose].)

The spousal testimony privilege has evolved considerably from these anachronistic roots (see Frost, *Updating the Marital Privileges: A Witness-Centered Rationale* (1999) 14 Wis. Women's L.J. 1, 12-15 [discussing some

---

[1]Under Evidence Code section 918, a spouse "may predicate error on a ruling disallowing a claim of privilege . . . by his spouse under Section 970 or 971."

of the commonly recognized exceptions to the spousal testimony privilege]), and many jurisdictions continue to recognize some form of this privilege (see *Trammel, supra,* 445 U.S. at p. 48, fn. 9 [100 S.Ct. at p. 911] [noting that 33 states recognize some form of spousal testimony privilege]). These jurisdictions do so because the privilege allegedly " 'preserve[s] marital harmony,' " " 'protect[s] marital privacy,' " and " 'promote[s] the socially beneficial institution of marriage.' " (Frost, *Updating the Marital Privileges,* at p. 2.) Nonetheless, the privilege has been "sharply criticized," and many commentators have called for its abolition. (*Trammel,* at pp. 44-45 [100 S.Ct. at p. 909]; see also *Young v. Superior Court* (1961) 190 Cal.App.2d 759, 764 [12 Cal.Rptr. 331] ["The whole concept of marital privilege, immunity or competency has been the subject of almost violent criticism by Wigmore . . . and is also damned by most modern writers"].)

In California, all privileges are statutory. (See Evid. Code, § 911, subd. (a) ["Except as otherwise provided by statute: [¶] (a) No person has a privilege to refuse to be a witness"].) Evidence Code section 970 codifies the spousal testimony privilege and provides that "[e]xcept as otherwise provided by statute, a married person has a privilege not to testify against his spouse in any proceeding." Evidence Code section 972 then defines numerous exceptions. Today, we determine the scope of the exception found in section 972(e)(2).

Section 972(e)(2) states that "[a] married person does not have a privilege" under section 970 in "[a] criminal proceeding in which one spouse is charged with: [¶] . . . [¶] . . . [a] crime against the person or property of a third person committed in the course of committing a crime against the person or property of the other spouse, whether committed before or during marriage." In determining the scope of this exception, we apply our well-established rules of statutory construction.

"When construing a statute, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727] (*Wilcox*), quoting *DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387 [20 Cal.Rptr.2d 523, 853 P.2d 978].) "[W]e begin with the words of a statute and give these words their ordinary meaning." (*Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 519 [106 Cal.Rptr.2d 548, 22 P.3d 324].) "If the statutory language is clear and unambiguous, then we need go no further." (*Ibid.*) If, however, the language supports more than one reasonable construction, we may consider "a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (*People v.*

*Woodhead* (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154] (*Woodhead*).) Using these extrinsic aids, we "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].)

In addition to the rules of statutory construction, we are also guided by the rules governing evidentiary privileges. ■ Because privileges "prevent the admission of relevant and otherwise admissible evidence," they "should be narrowly construed." (*People v. McGraw* (1983) 141 Cal.App.3d 618, 622 [190 Cal.Rptr. 461] (*McGraw*).) Applying this maxim in the marital privileges context, our courts have broadly construed the exceptions to these privileges. (See, e.g., *People v. Bogle* (1995) 41 Cal.App.4th 770, 782 [48 Cal.Rptr.2d 739] (*Bogle*) [broadly construing Evid. Code, § 972, subd. (e)(1)]; *Dunn v. Superior Court* (1993) 21 Cal.App.4th 721, 725-726 [26 Cal.Rptr.2d 365] (*Dunn*) [following "the courts' policy to construe privileges narrowly" by broadly construing an exception to the marital communications privilege].)

Upon applying these rules, we conclude the trial court properly compelled the testimony of defendant's wife pursuant to section 972(e)(2). In reaching this conclusion, we find that: (1) a court may compel spousal testimony pursuant to section 972(e)(2) even if no accusatory pleading charges the defendant with a crime against his or her spouse; and (2) the defendant commits a crime against a third person "in the course of committing a crime" against his or her spouse as contemplated in section 972(e)(2) if the crimes are part of a continuous course of criminal conduct and have some logical relationship to each other.

## II

■ Defendant contends the exception to the spousal testimony privilege contained in section 972(e)(2) does not apply unless an accusatory pleading charges the defendant with a crime against his or her spouse. The People counter that section 972(e)(2) contains no such requirement. We agree with the People.

Under section 972(e)(2), a spouse may not refuse to testify against the defendant spouse if the defendant is "*charged* with: [¶] . . . [¶] . . . [*a*] *crime against the person or property of a third person* committed in the course of committing a crime against the person or property of the other spouse . . . ." (Italics added.) The plain meaning of section 972(e)(2)

requires that the accusatory pleading charge defendant with a particular type of crime "against . . . a third person"—and not with a crime against his spouse.

Reading section 972(e)(2) in light of other exceptions to the spousal testimony privilege offers additional support for this interpretation. (See *Wilcox, supra,* 21 Cal.4th at p. 978 [interpreting one subdivision in a statute in light of two other subdivisions in the same statute].) Subdivision (e)(1) of Evidence Code section 972 precludes invocation of the spousal privilege if the defendant spouse "is charged with: [¶] . . . [¶] . . . [a] *crime against the person or property of the other spouse* . . . ." (Italics added.) Unlike subdivision (e)(2), subdivision (e)(1) of section 972, by its terms, requires an accusatory pleading charging the defendant with a crime against his or her spouse. Thus, the Legislature undoubtedly knew how to include such a requirement but declined to do so in the context of subdivision (e)(2). We are therefore confident the Legislature did not intend to limit subdivision (e)(2) to cases where the accusatory pleading charges the defendant with a crime against his spouse. (See *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 88 [260 Cal.Rptr. 520, 776 P.2d 222] [declining to interpret the term "affidavit" as requiring "personal knowledge" because the Legislature knew how to expressly adopt such a requirement, but chose not do so].)

Our review of the relevant policy considerations provides additional support. The purpose of the spousal testimony privilege is to preserve marital harmony. (See Tent. Recommendation: Study Relating to the Uniform Rules Evid. (Feb. 1964) 6 Cal. Law Revision Com. Rep. (1965) p. 242 ["The privilege not to testify . . . is recommended because compelling a married person to testify against his spouse would in many cases seriously disturb if not completely disrupt the marital relationship of the persons involved"].) In balancing this purpose against the countervailing principle that " ' "the public . . . has a right to every man's evidence" ' " (*Trammel, supra,* 445 U.S. at p. 50 [100 S.Ct. at p. 912], quoting *United States v. Bryan* (1950) 339 U.S. 323, 331 [70 S.Ct. 724, 730, 94 L.Ed. 884]), the Legislature has created exceptions where one spouse commits a crime against the other (see Evid. Code, § 972, subd. (e)(1), (2)). These exceptions rest on "the self-evident premise that marital harmony would be nonexistent in criminal actions where" one spouse "is the victim of a crime committed by" the other spouse. (*McGraw, supra,* 141 Cal.App.3d at p. 622.) Charging the defendant with a crime against his spouse therefore does not defeat the policy considerations behind the spousal testimony privilege. Rather, the defendant's actual *commission* of that crime so disrupts marital harmony that these policy

considerations no longer predominate. Thus, neither the policy supporting the spousal testimony privilege nor the language of section 972(e)(2) requires an accusatory pleading charging the defendant with a crime against his spouse. In any event, imposing such a requirement would exalt form over substance. Prosecutors could easily evade it by charging a defendant with a crime against his or her spouse in any case where the spouse is a witness.

The cases cited by defendant are inapposite. Both *People v. Ford* (1964) 60 Cal.2d 772, 785 [36 Cal.Rptr. 620, 388 P.2d 892] (*Ford*) (overruled on other grounds by *People v. Satchell* (1971) 6 Cal.3d 28, 36-40 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383]), and *People v. Green* (1965) 236 Cal.App.2d 1, 20, footnote 7 [45 Cal.Rptr. 744], addressed the portion of Penal Code former section 1322—one of the precursors of Evidence Code section 972—that precluded a husband or wife from testifying " 'for or against the other . . . except . . . in case of criminal actions or proceedings for a crime committed by one against the person [or property] of the other. . . .' " (*Green, supra*, 236 Cal.App.2d at p. 20, fn. 7, quoting Pen. Code, former § 1322, Stats. 1933, ch. 109, § 1, p. 565.) Based on this language—which mirrors the language of Evidence Code section 972, subdivision (e)(1)—*Ford* and *Green* concluded that an accusatory pleading charging the defendant with a crime against his spouse was a prerequisite for compelling spousal testimony under Penal Code former section 1322. (See *Ford*, at p. 785; *Green, supra*, 236 Cal.App.2d at pp. 20-21.) Because this language in Penal Code former section 1322 is quite different from the language in Evidence Code section 972(e)(2), neither *Ford* nor *Green* controls. Indeed, defendant concedes that these cases and most of the other cases cited in his briefs do not consider the actual language of Evidence Code section 972(e)(2).[2]

*People v. Pittullo* (1953) 116 Cal.App.2d 373 [253 P.2d 705] (*Pittullo*) is also unavailing, even though *Pittullo* did address a portion of Code of Civil

---

[2](See, e.g., *Young v. Superior Court, supra*, 190 Cal.App.2d at pp. 761-764 [construing the statutory exception to marital privileges in criminal proceedings for a crime committed by one spouse against the other spouse]; *People v. Schlette* (1956) 139 Cal.App.2d 165, 166-167 [293 P.2d 79] [same]; *People v. Marshall* (1954) 126 Cal.App.2d 357, 358 [272 P.2d 816] [same]; *People v. Tidwell* (1943) 61 Cal.App.2d 58, 60-62 [141 P.2d 969] [same]; *In re Kellogg* (1940) 41 Cal.App.2d 833, 836-838 [107 P.2d 964] [same]; see also *People v. Curiale* (1902) 137 Cal. 534, 536 [70 P. 468] [construing the statutory exception to the marital privileges for " 'cases of criminal violence [committed] by [one spouse] upon the other [spouse]' "]; *People v. Rader* (1914) 24 Cal.App. 477, 484-485 [141 P. 958] [same]; *Ex Parte Kantrowitz* (1914) 24 Cal.App. 203, 205 [140 P. 1078] [same].)

Procedure former section 1881, subdivision 1—another precursor of Evidence Code section 972—with language analogous to the language of section 972(e)(2).[3] (*Pittullo,* at p. 377.) Because the accusatory pleading charged the defendant in *Pittullo* with a crime against his wife (*id.* at p. 375), the Court of Appeal never considered whether the application of this exception required a pleading charging the defendant with a crime against his spouse. (See *Santisas v. Goodin* (1998) 17 Cal.4th 599, 620 [71 Cal.Rptr.2d 830, 951 P.2d 399] [a decision is authority only " 'for the points actually involved and actually decided' "].)

For the same reason, *Fortes v. Municipal Court* (1980) 113 Cal.App.3d 704 [170 Cal.Rptr. 292] (*Fortes*) does not help defendant. In *Fortes,* the pleading charged the defendant with a crime against his wife (*id.* at pp. 706-707), but the Court of Appeal held that section 972(e)(2) did not apply because the prosecution failed to make a prima facie showing that the defendant committed that crime. (*Fortes,* at pp. 713-714.) Thus, the court did not need to consider whether the formal charge was a requirement under section 972(e)(2). (See *Santisas v. Goodin, supra,* 17 Cal.4th at p. 620.) Accordingly, we decline to limit section 972(e)(2) to cases where the accusatory pleading charges the defendant with a crime against his spouse.

### III

■ Defendant also contends section 972(e)(2) does not apply because defendant did not kidnap or murder Terrazas "in the course of committing a crime" against his wife. According to defendant, the phrase "in the course of" establishes that the exception does not apply if the crime against the spouse is incidental to the crime against the third person. Thus, he argues that the spouse must be the defendant's primary victim—not the third person. We disagree and conclude section 972(e)(2) applies whenever the crime against the third person is part of the same continuous transaction as and bears some logical relationship to the crime against the spouse.

As an initial matter, the plain meaning of this phrase provides little guidance. The phrase "in the course of" "is often" just a wordy way of saying "*during* or *while*." (Garner, Dict. of Modern American Usage (1998) p. 382.) Although this definition implies some temporal connection between the two crimes, it does not appear to designate the crime against the spouse as the primary crime. On the other hand, the phrase "in the course of" has

---

[3]As relevant here, Code of Civil Procedure former section 1881, subdivision 1, precluded invocation of the spousal privilege in "a criminal action or proceeding . . . for a crime committed against another person by a husband or wife while engaged in committing and connected with the commission of a crime by one [spouse] against the other [spouse] . . . ." (Stats. 1939, ch. 129, § 5, pp. 1246-1247.)

also been defined as "in the process of" or "during the progress of." (3 Oxford English Dict. (2d ed. 1989) p. 1055.) This definition arguably suggests that the crime against the third person must be secondary to the crime against the spouse.

Because the statutory language is ambiguous, we look to extrinsic aids for guidance, beginning with the legislative history. (*Woodhead, supra,* 43 Cal.3d at p. 1008.) The Legislature enacted Evidence Code section 972, including subdivision (e)(2), as part of the newly created Evidence Code in 1965, and section 972(e)(2) has not changed since then. (Compare Evid. Code, § 972(e)(2) with Stats. 1965, ch. 299, § 2, p. 1327.) Evidence Code section 972 superseded Code of Civil Procedure section 1881, subdivision 1 and Penal Code section 1322. (Cal. Law Revision Com. com., reprinted at 29B pt. 3 West's Ann. Evid. Code (1995 ed.) foll. § 972, p. 267.) Certain exceptions found in Evidence Code section 972, including the exception codified in subdivision (e)(2), were drafted to be "consistent with" analogous exceptions to the marital communications privilege found in Evidence Code section 985. (Cal. Law Revision Com. com., reprinted at 29B pt. 3 West's Ann. Evid. Code, *supra,* at p. 267; compare Evid. Code, § 972(e)(2) with Evid. Code, § 985, subd. (b).) Thus, Evidence Code section 972(e)(2) restates "with minor variations" one of the exceptions to the marital privileges recognized in Code of Civil Procedure former section 1881, subdivision 1. (Cal. Law Revision Com. com., reprinted at 29B pt. 3 West's Ann. Evid. Code, *supra,* foll. § 985, p. 289.)

Code of Civil Procedure former section 1881, subdivision 1, stated in relevant part that "[a] husband can not be examined for or against his wife without her consent . . . [except in a] criminal action or proceeding . . . for a crime committed against another person by a husband or wife *while engaged in committing and connected with* the commission of a crime by one against the other . . . ." (Stats. 1939, ch. 129, § 5, pp. 1246-1247, italics added.) Given that the Legislature intended to restate this exception in section 972(e)(2) (see Cal. Law Revision Com. com., reprinted at 29B pt. 3 West's Ann. Evid. Code, *supra,* foll. § 985, p. 289), it apparently used the phrase "in the course of" as shorthand for the phrase "while engaged in committing and connected with" (compare Evid. Code, § 972(e)(2) with Code Civ. Proc., former § 1881, subd. 1, Stats. 1939, ch. 129, § 5, p. 1246). Thus, we may look to this language in Code of Civil Procedure former section 1881, subdivision 1, for guidance in interpreting the phrase "in the course of" in Evidence Code section 972(e)(2). As explained below, this language strongly suggests that the Legislature did not intend to limit the exception to cases where the spouse is the primary victim.

Code of Civil Procedure former section 1881, subdivision 1 used two criteria to define the requisite relationship between the crime against the

third person and the crime against the spouse. First, the defendant must have committed the crime against the third person "while engaged in committing" the crime against the spouse. (Code Civ. Proc., former § 1881, subd. 1, added by Stats. 1939, ch. 129, § 5, p. 1246 and repealed by Stats. 1965, ch. 299, § 64, p. 1361.) The word "while"—which means "during the time that" or "as long as"—implies that the two crimes must have a temporal relationship. (Webster's 10th New Collegiate Dict. (1993) p. 1347 (Webster's).) Other cases interpreting similar language in other contexts further clarify the requisite temporal relationship. These cases construe the temporal requirement implied by such language as establishing a continuous transaction test. (See *People v. Alvarado* (2001) 87 Cal.App.4th 178, 188-191 [104 Cal.Rptr.2d 624] [observing that the phrases "in the perpetration of," "*in* or *during the commission of*" and "in the course of the commission of" as used in various penal statutes establish a continuous transaction test].) Thus, crimes are sufficiently related in the temporal sense to satisfy Evidence Code section 972(e)(2) if they are part of one continuous course of criminal conduct. (See *Alvarado*, at p. 190.)

Second, the defendant's crime against the third person must have been "connected with" the crime against the spouse. (Code Civ. Proc., former § 1881, subd. 1, Stats. 1939, ch. 129, § 5, p. 1246.) The word "connected" indicates that the two crimes must have had some logical link or relationship to each other. (Webster's, *supra*, at p. 244 [defining "connected" as "1: joined or linked together 2: having the parts or elements logically linked together"].) Thus, in addition to imposing a continuous transaction test, Evidence Code section 972(e)(2) requires that the crime against the third person and the crime against the spouse bear some logical relationship to each other. It does not, however, require that the crime against the third person be incidental to the crime against the spouse or that the spouse be the primary victim of the offenses. Indeed, the requisite relationship between the two crimes need not be close; they need only have some nontemporal connection to each other.

Such an interpretation fits nicely with the relevant public policy considerations. Marital privileges, like other privileges, should be "accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' " (*Trammel, supra*, 445 U.S. at p. 50 [100 S.Ct. at p. 912], quoting *Elkins v. United States* (1960) 364 U.S. 206, 234 [80 S.Ct. 1437, 1454, 4 L.Ed.2d 1669] (dis. opn. of Frankfurter, J.).) After weighing this "need for probative evidence in the administration of criminal justice" against the need for marital harmony (*Trammel*, at p. 51 [100 S.Ct. at p. 912]), the Legislature crafted broad

exceptions to the marital privileges in cases where the defendant commits a crime against his spouse (see Evid. Code, §§ 972, subd. (e)(1), (2), 985, subds. (a), (b)). In doing so, the Legislature recognized that a husband's commission of a crime against his wife, by definition, disrupts the marriage to such an extent that the need to preserve marital harmony no longer exists. (*McGraw, supra*, 141 Cal.App.3d at p. 622.) Given this disruption in the marital relationship, allowing the wife to refuse to testify as to her husband's crimes against her is "far more likely to frustrate justice than to foster family peace." (*Trammel, supra*, 445 U.S. at p. 52 [100 S.Ct. at p. 913].) If courts may compel the wife to testify as to her husband's crimes against her, they should, as a matter of logic, be able to compel her to testify about the circumstances relating to and surrounding those crimes, even if this testimony implicates the husband in crimes against third persons. (See *Ford, supra*, 60 Cal.2d at p. 785.)

Indeed, we have already endorsed this logic in interpreting the exception to the spousal testimony privilege for crimes against the spouse. (See Evid. Code, § 972, subd. (e)(1).) In *Ford*, the husband kidnapped his wife and shot a police officer during the kidnapping. (*Ford, supra*, 60 Cal.2d at pp. 782-784.) At trial, the husband sought to preclude his wife from testifying about the shooting. (*Id.* at p. 785.) The trial court overruled the husband's objection, and we affirmed. (*Ibid.*) We held that the exception to the spousal privilege for " 'a crime committed . . . against the person . . . of' " the wife applied because the husband's crime against his wife—kidnapping—*"was still being committed when the shooting occurred."* (*Ibid.*, italics added.) Therefore, the wife properly testified "not only as to the kidnaping but also as to the circumstances leading up to and surrounding the shooting of" the officer. (*Ibid.*) Given this expansive interpretation of the exception for crimes against the spouse,[4] we see no reason to narrowly construe section 972(e)(2) in the manner proposed by defendant.

---

[4]Our expansive interpretation of this exception is consistent with the interpretation given by many of our sister courts to analogous exceptions to the spousal testimony privilege. (See, e.g., *Miller v. State* (1907) 78 Neb. 645 [111 N.W. 637, 638-639] [wife could testify as to her husband's crimes against third persons pursuant to the exception for " 'a crime by one against the other' " because the husband's crimes against her and the third persons "were so closely connected in point of time as to be a part of the res gestae"]; *State v. Briley* (1969) 53 N.J. 498 [251 A.2d 442, 446, 36 A.L.R.3d 811] ["If there is a single criminal event in which she [the wife] and others are targets or victims of the husband's criminal conduct in the totality of the integrated incident . . . the wife should be a competent and compellable witness against her husband at the trial of all the cases"]; *State v. Mowery* (1982) 1 Ohio St.3d 192 [438 N.E.2d 897, 899-900] [wife could testify as to her husband's crimes against a third person pursuant to the exception for " 'crimes against the testifying spouse' " because the husband's crimes against her and the third person "constitute[d] *one continuous transaction*" and "were overlapping and intertwined"]; *State v. Thompson* (1977) 88 Wash.2d 518 [564 P.2d 315, 317-318] [wife could testify as to her husband's crimes against third persons pursuant to the exception " 'for a crime committed by one against the other' " because the husband's crimes against the

Our interpretation also comports with the Mississippi Supreme Court's interpretation of a statute with language virtually identical to section 972(e)(2). In *Meeks v. State* (Miss. 1992) 604 So.2d 748, 754, a husband charged with crimes against his wife and other persons contended that the trial court erroneously compelled his wife's testimony over her objection. The Mississippi Supreme Court rejected this contention and concluded that the exception to the spousal testimony privilege for cases where " 'one spouse is charged with a crime against the person or property of . . . a third person committed in the course of committing a crime against' " the other spouse applied. (*Ibid.*) In reaching this conclusion, the court explained that "[w]hat is important is that all [of the husband's crimes, including his crime against his wife] arose out of the same episode or occurrence or, as some might say, the four charges were bound by a common nucleus of operative fact." (*Ibid.*)

The cases cited by defendant do not compel a different interpretation. In *Pittullo*, the Court of Appeal simply concluded that the husband's assault against a third person occurred in the course of his assault against his wife. (*Pittullo, supra,* 116 Cal.App.2d at p. 377.) Our interpretation of section 972(e)(2) is wholly consistent with *Pittullo*, and nothing in *Pittullo* supports the narrow interpretation proposed by defendant.

*Fortes* is also inapposite. In *Fortes,* the Court of Appeal simply held that section 972(e)(2) did not apply because the prosecution failed to make a prima facie showing that the defendant committed a crime against his spouse. (*Fortes, supra,* 113 Cal.App.3d at pp. 713-714.) Here, defendant does not dispute that the prosecution made a prima facie showing that he committed a crime against his wife. Thus, *Fortes* is unavailing.

Likewise, *People v. Resendez* (1993) 12 Cal.App.4th 98 [15 Cal.Rptr.2d 575], is distinguishable. In *Resendez,* the husband struck his wife at their residence and left. After he left, the wife asked her sister to help her leave. While the wife, her sister and her sister's boyfriend were packing her belongings, the husband returned with a concealed shotgun and tried to convince his wife to stay. As they were talking, he saw the sister's boyfriend and shot him. (*Id.* at p. 103.) At his trial for attempted murder, the trial court compelled his wife to testify despite her invocation of the spousal privilege. With no analysis, the Court of Appeal concluded that section 972(e)(2) did not " 'literally' apply under the facts of the instant case" and reversed.

third persons had a "logical relationship" to the crime against her], overruled on other grounds by *State v. Thornton* (1992) 119 Wash.2d 578 [835 P.2d 216, 219].)

(*Resendez*, at p. 110.) Despite the lack of analysis, the court's conclusion appears consistent with our interpretation. The husband was gone from the residence for some time after assaulting his wife and before shooting her sister's boyfriend. Consequently, the assault and the shooting were not part of a continuous course of criminal conduct, and the court properly concluded that section 972(e)(2) did not apply.

Finally, *People v. Green* (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1, 609 P.2d 468] is not germane. In *Green*, we examined Penal Code former section 190.2, subdivision (c)(3)—which defined the felony-murder special circumstance—and held that the special circumstance did not exist if the felony was "merely incidental to the murder." (*Green, supra,* 27 Cal.3d at pp. 59-61, construing Pen. Code, former § 190.2, subd. (c)(3), Stats. 1977, ch. 316, § 9, pp. 1257-1258.) We narrowly construed " 'during the commission or attempted commission of' " (*Green, supra,* 27 Cal.3d at p. 59), because the provision was supposed to distinguish "between those murderers who deserve to be considered for the death penalty and those who do not" (*id.* at p. 61, fn. omitted). The same policy concerns do not, however, exist here. Unlike special circumstances, exceptions to evidentiary privileges, like Evidence Code section 972(e)(2), should be construed broadly to promote the admission of all relevant evidence. (See *Bogle, supra,* 41 Cal.App.4th at p. 782; *Dunn, supra,* 21 Cal.App.4th at pp. 725-726.)

Thus, we conclude that Evidence Code section 972(e)(2) applies whenever the crime against the third person and the crime against the spouse (1) are part of a continuous course of criminal conduct, and (2) bear some logical relationship to each other. Under the uncontroverted evidence in this case, defendant undoubtedly committed a crime against his wife—i.e., false imprisonment (Pen. Code, § 236)—at the *same* time he kidnapped and murdered Terrazas. Defendant's crimes against Terrazas and his wife occurred in close spatial proximity to each other. Finally, even looking at defendant's crimes in the most favorable light, he committed the crime against his wife to facilitate his crimes against Terrazas. Under these facts, defendant's crimes against his wife and Terrazas were undoubtedly part of a continuous course of criminal conduct. They were also more than sufficiently linked to satisfy the logical relationship requirement. Indeed, this case is not even close. Accordingly, the trial court properly compelled the wife's testimony pursuant to Evidence Code section 972(e)(2).

### DISPOSITION

We reverse the judgment of the Court of Appeal and remand for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

Appellant's petition for a rehearing was denied August 14, 2002.