Alejandro **GONZALEZ DE ALBA**, Appellant,

v.

**COMMONWEALTH OF KENTUCKY,** Appellee.

No. 2005–SC–000489–MR.

Supreme Court of Kentucky.

Sept. 21, 2006.

---

**1.** In fact, marketing information for the FJ Cruiser touts a "glove box for the driver, too."

J. David Niehaus, Deputy Appellate Defender, Office of the Louisville Metro Public Defender, Louisville, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Jeffrey A. Cross, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

## OPINION

ROACH, Justice.

Appellant, Alejandro Gonzalez de Alba, was convicted in the Jefferson Circuit Court of murder and fourth-degree assault, and was sentenced to fifty years in prison. Appellant now asks that we reverse his convictions and remand the case for a new trial. He makes a single claim of error, namely, that the trial court improperly overruled his invocation of the spousal testimony privilege of KRE 504(a) to bar the testimony of his wife, Pauline Gonzalez, regarding the murder. We find no merit in his claim and affirm the judgment of the trial court.

### I. Background

This case arose out of an incident that occurred on the afternoon of Thanksgiving 2003. Appellant, Pauline Gonzalez, and Patrick Carter, Pauline's adult son, became embroiled in a physical altercation that began in the kitchen of the couple's home and culminated with Appellant shooting Carter to death with a revolver. While Pauline was the sole witness at trial to testify directly about the events that occurred inside the home preceding the shooting—Appellant did not take the stand—a police detective did testify regarding statements made by Appellant after his arrest. As a result, details about the beginning of the confrontation were disputed at trial.

Pauline stated that her son Patrick had come to her home to celebrate Thanksgiving. Appellant stayed in his bedroom throughout the visit and refused to eat dinner with the rest of the family. Later that afternoon, Appellant emerged from his bedroom and unplugged the television, saying, "The party's over." He threw a glass-top coffee table to the ground, shattering the glass, and then proceeded to the kitchen where he began throwing leftovers from the Thanksgiving meal into the backyard. When Pauline entered the kitchen and asked Appellant to stop, he began hitting and punching her on the head and in the mouth. Patrick came to the door of the kitchen and pleaded with Appellant to stop attacking his mother. At that point, Pauline told Patrick to leave, indicating that she would call the police. Patrick left the house, but Appellant followed him outside. Pauline testified that Patrick had neither fought with nor threatened Appellant with a weapon while the two men were inside the house.

Appellant's statements to police painted a slightly different picture of the incident. Detective Finch, the lead investigator on

the case, testified that Appellant was upset, crying, and apologetic during questioning at the police homicide office. Appellant stated that he and Patrick had experienced ongoing problems in their relationship, primarily stemming from what he perceived as a lack of respect from Patrick. He acknowledged that he had been upset and stated that he, Pauline, and Patrick had gotten into an altercation in the kitchen which involved minor pushing, shoving, and hitting. Further, he claimed that during the fight in the kitchen, Patrick had threatened and tried to cut him with a knife, directly contradicting Pauline's testimony.

There is little dispute as to what occurred next. In addition to Pauline, three neighbors testified as to what happened once the two men were outside. After the two men emerged from the house, they began fighting in the street. During the fight, Patrick punched Appellant, knocking him to the ground. Appellant then got up and ran back into the house. In his statements to police, Appellant claimed that he blacked out after going back to the house and remembered nothing further about the incident. At this point, Pauline urged Patrick to leave, warning him that Appellant had gone back inside to get a gun. As Patrick and his mother were searching for his car keys, Appellant emerged from the house carrying a handgun. Appellant chased Patrick between two houses and fired multiple shots. One bullet hit Patrick in the chest; another hit him in the hand and then grazed his forearm. The revolver, which police discovered in a bag in Pauline's house, contained three spent and three live rounds of ammunition. Photos of Appellant from the night of the murder show that he suffered minor injuries including abrasions about his neck and a cut on his finger. Appellant claimed that Patrick had cut his finger with a knife in the kitchen.

The case proceeded to trial on February 28, 2005. Prior to selecting a jury, the court entertained pre-trial motions. Among those offered by Appellant was a motion in limine to exclude any testimony from his wife regarding the murder charge pursuant to the spousal testimony privilege of KRE 504. Although Appellant admitted that he could not bar Pauline's testimony concerning the assault charges— the privilege was inapplicable since he was alleged to have assaulted her—he claimed that any additional testimony by Pauline relating to the shooting was impermissible under the rule. The Commonwealth argued that Pauline's testimony was admissible under an exception to the KRE 504 privilege. The trial court reserved its ruling and took the matter under submission. The next day, after further argument by the parties, the trial court ruled in the Commonwealth's favor that Pauline would be allowed to testify as to all matters pertinent to the charges. In making its ruling, the court noted that given the facts in the case, application of the privilege would do little to preserve marital harmony, the primary justification for the rule. *See, e.g., St. Clair v. Commonwealth*, 174 S.W.3d 474, 479 (Ky.2005) (both privileges in KRE 504 "are designed to protect and enhance the marital relationship"). In light of the trial court's ruling, Appellant was offered and accepted a continuing objection to Pauline's testimony. Appellant also moved for severance of the charges, but that motion was also denied.

The trial proceeded and, after presentation of all the evidence, the jury was given instructions on murder with an extreme emotional disturbance (EED) qualifier, first-degree manslaughter, fourth-degree assault, and fourth-degree assault with a qualifier for EED. The jury deliberated approximately two hours before deciding Appellant was guilty of murder. During

the penalty phase, the jury deliberated for less than one hour before recommending that Appellant be sentenced to fifty years in prison for the murder and to one day in prison for the assault. The sentences were ordered to be served concurrently for a total sentence of fifty years. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

## II. Analysis

As noted above, the sole question in this case concerns the applicability of the husband-wife privilege set forth in KRE 504, specifically the spousal testimony privilege defined in KRE 504(a).[1] The rule is as follows:

(a) Spousal testimony. The spouse of a party has a privilege to refuse to testify against the party as to events occurring after the date of their marriage. A party has a privilege to prevent his or her spouse from testifying against the party as to events occurring after the date of their marriage.

. . .

(c) Exceptions. There is no privilege under this rule:

(1) In any criminal proceeding in which the court determines that the spouses conspired or acted jointly in the commission of the crime charged;

(2) In any proceeding in which one (1) spouse is charged with wrongful conduct against the person or property of:

(A) The other;

(B) A minor child of either;

(C) An individual residing in the household of either; or

(D) A third person if the wrongful conduct is committed in the course of wrongful conduct against any of the individuals previously named in this sentence; or

(3) In any proceeding in which the spouses are adverse parties.

(d) Minor Child. The court may refuse to allow the privilege in any proceeding if the interests of a minor child of either spouse may be adversely affected.

Appellant invoked the privilege under KRE 504 in a pre-trial motion in limine to prevent his wife from testifying as to anything but the assault charges that were pending against him.[2] Appellant conceded

1. We must note that KRE 504 was amended by an order of this Court effective July 1, 2006. That said, the changes to the rule are of no significance to the issues presented in this appeal and the relevant language of the rule is unchanged from the time of Appellant's trial. As such, and for the sake of future clarity, our citation to and quotation from the rule refers to the most recent version.

2. It is interesting to note that Appellant admitted, both before the trial court and in his brief to this Court, his belief that Pauline had initiated divorce proceedings against him before the case went to trial. While this issue was not addressed by the trial court and has not been addressed at length by either party, KRE 504 "clearly requires a claimant to prove the existence of a valid ongoing marriage at the time spousal testimony is sought (meaning that the [spousal testimony] privi-

lege does not survive divorce)." Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 5.10[3], at 367 (4th ed.2003). Moreover, "[t]here is very strong, if not prevailing, support in federal case law for limiting the marital privileges to situations in which there is a valid marriage. ... [But] Kentucky law is mostly silent on this issue. The privileges of KRE 504 require 'marriage' but the provision says nothing about the need for a 'valid' relationship or about permanently separated spouses." *Id.* § 5.10[5], at 373–74. Professor Lawson goes so far to suggest that separation of the spouses and filing for divorce may be sufficient to bar the privilege. However, we need not decide this issue, since the parties have not raised it and the record does not clearly establish whether divorce proceedings had actually been initiated. We simply note that the realities of a privilege claimant's relationship with his or her spouse may have

that he could not stop Pauline from testifying regarding the assault under KRE 504(c)(2)(A), which provides an exception to the marital privilege "[i]n any proceeding in which one (1) spouse is charged with wrongful conduct against the person or property of ... the other [spouse]." Nevertheless, he maintained that his wife should be barred from testifying regarding the murder charge since that crime, though close in time, was factually distinct from the assault he was alleged to have committed against her and, therefore, did not fall under any of the exceptions listed in KRE 504.

The Commonwealth disagreed, arguing that Pauline's testimony about the murder charge was permitted by the exception at KRE 504(c)(2)(D). That provision states that the marital privilege is inapplicable "[i]n any proceeding in which one (1) spouse is charged with wrongful conduct against the person or property of ... [a] third person if the wrongful conduct is committed in the course of wrongful conduct against any of the individuals previously named in this sentence." The group of individuals that the exception refers to includes the other spouse. The Commonwealth stated that Appellant's assault against Pauline was the first in a connected series of wrongful acts that culminated in the shooting death of Patrick. Because Patrick's murder was "committed in the course of wrongful conduct against [Pauline]," the Commonwealth argues that the privilege does not apply.

We have noted that the marital privileges are to be construed narrowly:

> The exceptions provided in KRE 504(c)(2) reflect the fact that the marital privilege is considered by many to be in

disfavor as a result of abuses which prevent ascertaining the truth.... The courts have approached the privilege by narrowly and strictly construing it because it has the potential for shielding the truth from the court system. Many courts have determined that when the reason supporting the privilege, marital harmony, no longer exists, then the privilege should not apply to hide the truth from the trier of fact.

*Mullins v. Commonwealth*, 956 S.W.2d 210, 212 (Ky.1997) (internal citations omitted). This in turn requires that we give full effect to the privilege's designated exceptions.

All that being said, construction of KRE 504(c)(2)(D), particularly the meaning of the phrase "in the course of wrongful conduct," is a matter of first impression in Kentucky. Specifically, we must decide whether Appellant's act of murdering Patrick was committed "in the course of" his assault against Pauline such that the exception to the marital privilege applies. Given the facts in this case, and considering the principles outlined above, we affirm the trial court's decision allowing Pauline to testify. Here Appellant admitted to the police that he instigated an argument with his wife and her son. That argument quickly escalated and produced two violent crimes: the assault on Appellant's wife and murder of Patrick. The mere fact that Appellant describes these events as the products of discrete acts of violence does not prevent the application of KRE 504(c)(2)(D). Simply put, the uninterrupted and logical progression of events in this case compels the conclusion that the murder was committed "in the course of" the assault on Pauline.[3] To conclude other-

---

some bearing on the application of the marital privileges.

3. This interpretation is consistent with the treatment of similar provisions in other jurisdictions. *See, e.g., People v. Sinohui*, 28 Cal.4th 205, 120 Cal.Rptr.2d 783, 47 P.3d

wise, and thereby deny Pauline the right to testify, would amount to an unjustifiable expansion of the spousal testimony privilege.[4]

Accordingly, Appellant's convictions for murder and fourth-degree assault are affirmed.

All concur.

629, 633 (2002) (holding that a "trial court properly compelled the testimony of defendant's wife pursuant to section 972(e)(2) [the statutory provision defining exceptions to the spousal testimony privilege]. In reaching this conclusion, we find that: (1) a court may compel spousal testimony pursuant to section 972(e)(2) even if no accusatory pleading charges the defendant with a crime against his or her spouse; and (2) the defendant commits a crime against a third person 'in the course of committing a crime' against his or her spouse as contemplated in section 972(e)(2) if the crimes are part of a continuous course of criminal conduct and have some logical relationship to each other.").

4. Even if we were convinced that the trial court's decision amounted to reversible error, it is possible that Appellant's claim would actually be moot. Assuming for the sake of argument that Appellant's counsel was correct that Pauline had initiated divorce proceedings against Appellant at the time of trial, it is likely that those proceedings would have been resolved by now. If Appellant and Pauline are no longer married, it is difficult to imagine the grounds on which he could assert the spousal testimony privilege were we to grant a retrial.