PEÑA, J.,
Concurring.—I concur in the judgment and the majority opinion with the exception of part ID. I agree defendant Victor Leon Buford may not take advantage of Proposition 47’s[1] newly enacted definition of “ ‘unreasonable risk of danger to public safety’ ” as provided in Penal Code section 1170.18, subdivision (c) (section 1170.18(c)). I do so not because there is any ambiguity in the language used in section 1170.18(c) or the notion that the statute does not mean what it says, i.e., that the new definition applies ‘“throughout this Code.” {Ibid.) Rather, in my view, there is no indication the electorate, in enacting section 1170.18(c), intended it to apply retroactively to resentencing determinations under Proposition 36, the Three Strikes Reform Act of 2012 (the Act).[2]
*915 I. After November 4, 2014, the definition of “ ‘unreasonable risk of danger’ ” in section 1170.18(c) applies throughout the Penal Code
Section 1170.18(c) provides: “As used throughout this Code, ‘unreasonable risk of danger to public safety’ means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667.”
This section and subdivision were enacted on November 4, 2014, when California voters passed Proposition 47, long past the time of defendant’s resentencing hearing. Unless the legislation was designed or intended to apply retroactively, the definition in section 1170.18(c) cannot apply to defendant. This is the only inquiry we must make to resolve the issue of whether the definition in section 1170.18(c) applies to defendant. However, the majority has opted to determine whether the new definition applies to any resentencing provisions for this or any future petitions under the Act. I respectfully disagree with the majority’s analysis and conclusion on this broader issue. “ ‘When construing a statute, we must “ascertain the intent of the Legislature so as to effectuate the purpose of the law.” ’ [Citation.] ‘[W]e begin with the words of a statute and give these words their ordinary meaning.’ [Citation.] ‘If the statutory language is clear and unambiguous, then we need go no further.’ [Citation.] If, however, the language supports more than one reasonable construction, we may consider ‘a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.’ [Citation.] Using these extrinsic aids, we ‘select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.’ [Citation.]” (People v. Sinohui (2002) 28 Cal.4th 205, 211-212 [120 Cal.Rptr.2d 783, 47 P.3d 629].)
Where the statutory language is so clear and unambiguous, there is no need for statutory construction or to resort to legislative materials or other outside sources. (Quarterman v. Kefauver (1997) 55 Cal.App.4th 1366, 1371 [64 Cal.Rptr.2d 741].) Absent ambiguity, it is presumed the voters intend the meaning apparent on the face of an initiative measure, and the courts may not add to the statute or rewrite it to conform to a presumed intent not apparent in its language. (People ex rel. Lungren v. Superior Court (1996) 14 Cal.4th 294, 301 [58 Cal.Rptr.2d 855, 926 P.2d 1042].)
*916 In determining whether the words enacted here are unambiguous, we do not write on a blank slate. For example, in Marshall v. Pasadena Unified School Dist. (2004) 119 Cal.App.4th 1241, 1255 [15 Cal.Rptr.3d 344], the court stated there “is nothing ambiguous about the phrase ‘as used in this code.’ ” It held the definition of “ ‘Emergency,’ as used in this code” applied to the entire Public Contract Code, and it was not limited to a particular chapter, article, or division of that code. (Ibid., italics omitted.) Also, in People v. Bucchierre (1943) 57 Cal.App.2d 153, 166 [134 P.2d 505], the court held: “The words ‘as in this code provided’ (Penal Code, § 182) refer to the Penal Code.”
In a similar vein, the court in People v. Leal (2004) 33 Cal.4th 999, 1007-1008 [16 Cal.Rptr.3d 869, 94 P.3d 1071], applied the plain meaning rule as follows:
“The statutory language of the provision defining ‘duress’ in each of the rape statutes is clear and unambiguous. The definition of ‘duress’ in both the rape and spousal rape statutes begins with the phrase, ‘As used in this section, “duress” means . . . .’ (§§261, subd. (b), 262, subd. (c).) This clear language belies any legislative intent to apply the definitions of ‘duress’ in the rape and spousal rape statutes to any other sexual offenses.
“Starting from the premise that in 1990 the Legislature incorporated into the rape statute a definition of ‘duress’ that already was in use for other sexual offenses, defendant argues that the Legislature must have intended its 1993 amendment of the definition of ‘duress’ in the rape statute, and the incorporation of this new definition into the spousal rape statute, to apply as well to other sexual offenses that use the term ‘duress.’ Defendant observes: ‘The legislative history does not suggest any rationale for why the Legislature would want its 1993 amendment of the definition of “duress” to apply only to rape so that it would have one meaning when the rape statutes use the phrase “force, violence, duress, menace, or fear of immediate and unlawful bodily injury” but another, much more expansive meaning when the identical phrase is used in the statutes defining sodomy, lewd acts on a child, oral copulation and foreign object rape.’
“But the Legislature was not required to set forth its reasons for providing a different definition of ‘duress’ for rape and spousal rape than has been used in other sexual offenses; it is clear that it did so. ‘When “ ‘statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.’ ” [Citations.] The plain meaning of words in a statute may be disregarded only when that meaning is “ ‘repugnant to the general purview of the act,’ or for some other compelling reason . . . .” [Citations.]’ [Citation.] As we said in an analogous situation: ‘It is our task to *917 construe, not to amend, the statute. “In the construction of a statute ... the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted . . . .” [Citation.] We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.’ [Citation.]”
The majority pays lip service to the plain meaning rule and then ignores it. While acknowledging the language used is unambiguous, it nonetheless engages in statutory construction to determine whether the electorate really intended to say what it actually enacted. The end result is a rewriting of the statute so that it comports with the majority’s view of what the voters really intended. The majority has rewritten section 1170.18(c) so that it now states: “Ay used in this section only, ‘unreasonable risk of danger to public safety’ means . . . .” The majority does so without providing a compelling reason to do so and without showing the plain language used has a “ ‘meaning [that] is “ ‘repugnant to the general purview of the act.’ ” ’ ” (People v. Leal, supra, 33 Cal.4th at p. 1008.) Because the Act had not previously defined the phrase “unreasonable risk of danger to public safety,” the definition in section 1170.18(c) cannot be repugnant or contradictory to the Act, nor does the majority claim the definition is repugnant to the general purview of Proposition 47. For these reasons, I respectfully disagree with the majority on this part of the opinion.
I note the Sixth District Court of Appeal in People v. Esparza (2015) 242 Cal.App.4th 726, 734-737 [195 Cal.Rptr.3d 597] has reached the same result as the majority here under nearly identical reasoning. There the court seemingly acknowledges that applying the plain meaning rule would not lead to absurd results. However, like the majority here, the court refused to give the words used their unambiguous, ordinary meaning, stating “we would need the most compelling proof that the voters intended what we see as an unreasonable and counterintuitive result.” {Id. at p. 737.)
Subsequently, the Sixth Appellate District, in an opinion authored by one of the justices who concurred in the Esparza decision, reversed position after further reflection and further research on the public debate surrounding the passage of Proposition 47. (People v. Cordova (2016) 248 Cal.App.4th 543, 552, fn. 8 [203 Cal.Rptr.3d 700], review granted Aug. 31, 2016, S236179.) The majority in Cordova extensively outlined in the opinion how the question of whether Proposition 47 could affect petitions under the Act was widely debated in the state by opponents of the measure. (Cordova, supra, at pp. 560-564.)
The majority here dismisses these sources of information stating, “We are aware of no California Supreme Court authority identifying Internet and *918 media sources as reliable bases for ascertaining voters’ intent.” (Maj. opn., ante, at fn. 26, par. 2, p. 911.) However, the Cordova case cites two such cases—Brosnahan v. Brown (1982) 32 Cal.3d 236 [186 Cal.Rptr. 30, 651 P.2d 274] and Amador Valiev Joint Union High Sch. Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208 [149 Cal.Rptr. 239, 583 P.2d 1281]—that considered other informative sources on voter intent. Conversely, the majority has cited to no case or authority that confines or otherwise limits the search for voters’ intent to ballot summaries and arguments. I quote from the Brosnahan case:
“Finally, petitioners insist that the complexity of Proposition 8 may have led to confusion or deception among voters, who were assertedly uninformed regarding the contents of the measure. Yet, as was the case in both Amador and FPPC[3] Proposition 8 received widespread publicity. Newspaper, radio and television editorials focused on its provisions, and extensive public debate involving candidates, letters to the editor, etc., described the pros and cons of the measure. ... [¶] ... [¶]
“Petitioners’ enhre argument that, in approving Proposition 8, the voters must have been misled or confused is based upon the improbable assumption that the people did not know what they were doing. . . . Rather, in accordance with our tradition, ‘we ordinarily should assume that the voters who approved a constitutional amendment “. . . have voted intelligently upon an amendment to their organic law, the whole text of which was supplied each of them prior to the election and which they must be assumed to have duly considered.” ’ [Citations.]” (Brosnahan v. Brown, supra, 32 Cal.3d at pp. 251-252.)
The majority in Cordova has debunked the arguments relied upon in Esparza and the majority opinion in this case regarding what the voters must have intended based on legislative history and arguments for and against the passage of Proposition 47. However, until further clarification from our California Supreme Court, I rely, as I must, on the plain meaning rule. (People v. Leal, supra, 33 Cal.4th at pp. 1007-1008.)
II. Section 1170.18(c) has no application to defendant’s resentencing under the Act
I do concur in the result because there is nothing in Proposition 47 to indicate the definition enacted under section 1170.18(c) is to be applied retroactively to defendant under the Act.
*919 I begin my analysis with section 3 of the Penal Code, which provides that ‘“[n]o part of it is retroactive, unless expressly so declared.” “Whether a statute operates prospectively or retroactively is, at least in the first instance, a matter of legislative intent. When the Legislature has not made its intent on the matter clear,” section 3 provides the default rule. (People v. Brown (2012) 54 Cal.4th 314, 319 [142 Cal.Rptr.3d 824, 278 P.3d 1182].) Proposition 47 is silent on the question of whether it applies retroactively to proceedings under the Act. The analysis of Proposition 47 by the Legislative Analyst and the arguments for and against Proposition 47 are also silent on this question. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) pp. 34-39.) Because the statute contains no express declaration that section 1170.18(c) applies retroactively to proceedings under the Act, and there is no clearly implied intent of retroactivity in the legislative history, the default rule applies. Defendant cites In re Estrada (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] to argue retroactive application.
In Estrada, the court stated: “When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology.” (In re Estrada, supra, 63 Cal.2d at p. 745.)
Defendant argues that under the Estrada case, unless there is a “saving clause” providing for prospective application, a statute lessening punishment is presumed to apply to all cases not yet reduced to a final judgment on the statute’s effective date. (In re Estrada, supra, 63 Cal.2d at pp. 744-745, 747-748.) However, the Estrada case has been revisited by our Supreme Court on several occasions. In People v. Brown, supra, 54 Cal.4th at page 324, the court stated: “Estrada is today properly understood, not as weakening or modifying the default rule of prospective operation codified in [Penal Code] section 3, but rather as informing the rule’s application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments.” “The holding in Estrada was founded on the premise that ‘ “[a] legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law.” ’ ” (Id. *920 at p. 325.) In Brown, the court did not apply the Estrada rule because “a statute increasing the rate at which prisoners may earn credits for good behavior does not represent a judgment about the needs of the criminal law with respect to a particular criminal offense, and thus does not support an analogous inference of retroactive intent.” (People v. Brown, supra, at p. 325.)
Similarly here, Estrada does not control because applying the definition of ‘“unreasonable risk of danger to public safety” in Proposition 47 to petitions for resentencing under the Act does not reduce punishment for a particular crime.[4] Instead, the downward modification of a sentence authorized by the Act is dependent not just on the current offense but on any number of unlimited factors related to the individual offender, including criminal conviction history, disciplinary and rehabilitation records, and ‘“[a]ny other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety.” (Pen. Code, § 1170.126, subd. (g)(3).)
For this reason also, defendant’s argument his equal protection rights would be violated if he is denied retroactive application is unavailing. In light of the unlimited factors related to individual offenders that inform the exercise of discretion, no two individual offenders may be said to be similarly situated for purposes of resentencing under the Act. Defendant fails to establish he has been denied equal protection as against any other similarly situated individual.
Because section 1170.18(c)’s definition of “ ‘unreasonable risk of danger to public safety’ ” does not apply retroactively to the Act, the sentencing court applied the correct standard in exercising its discretion to not resentence defendant. Since defendant has failed to show an abuse of that discretion, I concur in the majority’s affirmance of the judgment.
Appellant’s petition for review by the Supreme Court was granted January 11, 2017, S238790.

 The Safe Neighborhoods and Schools Act (Prop. 47, as approved by voters, Gen. Elec. (Nov. 4, 2014)).

 The issue of whether Proposition 47’s definition of unreasonable risk of danger to public safety applies in Proposition 36 resentencing proceedings is pending before the California Supreme Court in People v. Chaney (2014) 231 Cal.App.4th 1391 [180 Cal.Rptr.3d 443], *915 review granted February 18, 2015, S223676, and People v. Valencia (2014) 232 Cal.App.4th 514 [181 Cal.Rptr.3d 229], review granted February 18, 2015, S223825.

3 “FPPC’ refers to Fair Political Practices Com. v. Superior Court (1979) 25 Cal.3d 33, 42 [157 Cal.Rptr. 855, 599 P.2d 46] (“Given the widespread public debate of initiatives, the explanations in the ballot pamphlets and in the media. ... it is unreasonable to assume that initiative measures receive less scrutiny than proposed legislation.” [italics added].)

 The majority in People v. Cordova, supra, 248 Cal.App.4th at page 568 acknowledged Estrada’s limited applicability, but found in favor of retroactivity for other reasons not urged here by defendant nor briefed by the People. As the retroactivity issue is currently pending, I will wait for guidance from our Supreme Court on this issue.