[No. H031427. Sixth Dist. July 9, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
PAULINA VIRGINIA GAMBLE, Defendant and Appellant.

## Counsel

Tutti Hacking, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MIHARA, J.**—Defendant was convicted by plea of one count of making an insufficient funds check (Pen. Code, § 476a, subd. (a)), three counts of commercial burglary (Pen. Code, § 459), and one count of felony escape (Pen. Code, § 4532, subd. (a)(1)). She was committed to state prison to serve a three-year term for the burglary counts, a concurrent term for the check count, and a consecutive four-month term for the Penal Code section 4532, subdivision (a)(1) felony escape count. We conclude that a consecutive term is not mandatory for a Penal Code section 4532, subdivision (a)(1) felony escape. Because the trial court erroneously believed that a consecutive term was mandatory for the escape count, we remand for a new sentencing hearing at which the trial court shall exercise its discretion to select either a concurrent or a consecutive term for the escape count.

## I. Background

In November 2005, defendant pleaded no contest to making an insufficient funds check (Pen. Code, § 476a, subd. (a)), in exchange for felony probation. On December 13, 2005, she was granted probation for that offense. At the same hearing, she was sentenced for an unrelated offense for which she was ordered to serve a jail term beginning on February 3, 2006. She was arrested and charged with three commercial burglary counts in late December 2005.

In April 2006, defendant pleaded no contest to the burglary counts and admitted violating her probation in the check case. On May 30, 2006, the trial court imposed a three-year state prison term in the burglary case, but it suspended execution of this prison term and granted defendant felony probation conditioned on service of a 365-day jail term. She was given 134 days of custody credit. Her probation in the check case was revoked and reinstated.

On June 5, 2006, defendant, who was in jail, was given a jail pass to go to an eye appointment. She failed to return. Defendant was arrested four months later in San Francisco on new theft-related charges. She was charged with escape (Pen. Code, § 4532, subd. (a)(1)).[1] The complaint alleged that she "did

---

[1] The record does not reveal why defendant, who was in jail for multiple felony convictions, was charged with escape by a misdemeanant (Pen. Code, § 4532, subd. (a)(1)) rather than escape by a felon (Pen. Code, § 4532, subd. (b)(1)).

willfully and unlawfully, while being a prisoner arrested and booked for and charged with a violation of Section 459, 476A(A), 475(C) of the PENAL Code, escape and attempt to escape from MONTEREY COUNTY JAIL." The complaint contained no other allegations.

In October 2006, defendant pleaded guilty to the escape count as charged. Based on her plea, the court also found her in violation of her probation in the burglary and check cases and revoked her probation.

In February 2007, the court lifted the suspension of the three-year prison term for the burglary counts and imposed a concurrent two-year term for the check count. The prosecutor argued that "[t]he 4532(a)(1) charge is a mandatory consecutive sentence per statute," and he sought a four-month consecutive term for that count. The court noted that "[t]he consecutive language is missing from (a)(1)" although it was present in Penal Code section 4532, subdivision (b)(1). Defendant's trial counsel argued that Penal Code section 4532, subdivision (c)(5) did not mandate a consecutive prison term for the escape count.

The court decided that a consecutive term was mandatory. "The Court does find it appropriate, and really I—the Court will even make the legal conclusion so that if it's of help on appeal, if there is an appeal, that the Court feels that the statute mandates the consecutive sentence, and that it be consecutive to the cases that we're dealing with here today." The court then imposed the four-month consecutive term sought by the prosecution. Defendant filed two timely notices of appeal and requests for a certificate of probable cause.[2] The court denied her requests for a certificate of probable cause.

---

[2] Both of her notices of appeal were inoperative. One notice of appeal bore the preprinted words "P. C. Section 1237" and "Rules of Court Rule 31" and purported to appeal "from the final judgment" in all three actions. The request for a certificate of probable cause accompanying this notice of appeal was on a check box form. She had checked three boxes under ineffective assistance of counsel: (1) "Failure/refusal to prepare and/or present an affirmative defense at the preliminary hearing" after which she had written "(waived preliminary all together.)"; (2) "Failure/refusal to show or take interest in defendant's defense"; (3) "Failure/refusal to:" after which she had written "show documents that could have been beneficial to my defense." Defendant also checked a box for erroneous denial of a motion to withdraw the plea.

The other notice of appeal was on a form which was captioned "NOTICE OF APPEAL— FELONY (DEFENDANT) [¶] (Pen. Code, §§ 1237, 1538.5(m); Cal. Rules of Court, rule 31(d))." The instructions on this form stated: "If your appeal challenges the validity of the plea you must complete the Request for Certificate of Probable Cause on the other side of this form. (Pen. Code, § 1237.5.)" (Italics omitted.) These instructions were followed by a series of check boxes. The only boxes defendant checked were the boxes to show that she was appealing after "A contested violation of probation" and "Other (specify):" which she left unspecified. (Italics

## II.  Analysis

Penal Code section 4532,[3] subdivision (a)(1) does not explicitly mandate that the prison term for a nonviolent escape by a misdemeanant be served consecutively, but the Attorney General contends that subdivision (c)(5) establishes that *all* sentences imposed under section 4532 must be served consecutively. Subdivision (c), which contains five separate paragraphs, currently provides in subdivision (c)(5) that "[a]ny sentence imposed *under this subdivision* shall be served consecutive to any other sentence in effect or pending." (Subd. (c)(5), italics added.) Defendant counters that subdivision (c)(5) is inapplicable to her subdivision (a)(1) conviction because subdivision (c)(5) applies only to sentences "imposed under this subdivision"—that is, sentences imposed under subdivision (c), not sentences imposed under subdivision (a).

Our task is to construe the meaning of section 4532. Subdivision (a)(1) currently provides that a person who is in custody for a misdemeanor and escapes or attempts to escape "is guilty of a felony and, if the escape or attempt to escape was not by force or violence, is punishable by imprisonment in the state prison for a determinate term of one year and one day, or in a county jail not exceeding one year." (Subd. (a)(1).) Subdivision (a)(2) currently provides that, if such an escape or attempt to escape is committed by force or violence, it is a felony "punishable by imprisonment in the state prison for two, four, or six years to be served consecutively, or in a county jail not exceeding one year," and if it is punished by a county jail term, that

---

omitted.) She did not check the box for an appeal after a guilty or no contest plea, or the box to indicate that her appeal was "based on the sentence or other matters occurring after the plea. (Cal. Rules of Court, rule 31(d).)"

Defendant completed the request for a certificate of probable cause on this notice of appeal. She asserted that her plea was illegal because she "should not have been charged with the escape" as she was "not even eligible for [a] pass" and "county jail officials" had negligently failed to have her "sign the release agreement." Defendant claimed that she had provided documentation to her attorney of these facts, but her attorney refused to present this to the court "because it will make me look stupid."

This court requested supplemental briefing on the inadequacy of defendant's notices of appeal, and defendant responded by filing a motion for relief from default. "For good cause, a reviewing court may relieve a party from default for any failure to comply with these rules except the failure to file a timely notice of appeal or a timely statement of reasonable grounds in support of a certificate of probable cause." (Cal. Rules of Court, rule 8.60(d).) Since the errors in the notices of appeal were made by an uncounseled defendant, her appeal was processed as if the notices were operative, and the errors should have been corrected by her appointed appellate counsel in a timely fashion, we found good cause and granted her motion.

[3] Subsequent statutory references are to this section unless otherwise specified.

term "shall commence from the time the prisoner otherwise would have been discharged from jail." (Subd. (a)(2).)

■ Subdivision (b)(1) and subdivision (b)(2) currently describe the crime of escape or attempted escape by a person in custody for a felony, and provide that, where a prison term is imposed for either a violent or a nonviolent escape or attempt to escape by a felon, that prison term must be served consecutively.

Subdivision (c) currently reads in its entirety: "(c)(1) Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any person who is convicted of a felony offense under this section in that he or she escaped or attempted to escape from a secure main jail facility, from a court building, or while being transported between the court building and the jail facility. [¶] (2) In any case in which a person is convicted of a violation of this section designated as a misdemeanor, he or she shall be confined in a county jail for not less than 90 days nor more than one year except in unusual cases where the interests of justice would best be served by the granting of probation. [¶] (3) For the purposes of this subdivision, 'main jail facility' means the facility used for the detention of persons pending arraignment, after arraignment, during trial, and upon sentence or commitment. The facility shall not include an industrial farm, industrial road camp, work furlough facility, or any other nonsecure facility used primarily for sentenced prisoners. As used in this subdivision, 'secure' means that the facility contains an outer perimeter characterized by the use of physically restricting construction, hardware, and procedures designed to eliminate ingress and egress from the facility except through a closely supervised gate or doorway. [¶] (4) If the court grants probation under this subdivision, it shall specify the reason or reasons for that order on the court record. [¶] (5) Any sentence imposed under this subdivision shall be served consecutive to any other sentence in effect or pending." (Subd. (c).)

■ " 'When construing a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' [Citation.] '[W]e begin with the words of a statute and give these words their ordinary meaning.' [Citation.] 'If the statutory language is clear and unambiguous, then we need go no further.' [Citation.] If, however, the language supports more than one reasonable construction, we may consider 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.'

[Citation.] Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " (*People v. Sinohui* (2002) 28 Cal.4th 205, 211–212 [120 Cal.Rptr.2d 783, 47 P.3d 629].) "Where reasonably possible, we avoid statutory constructions that render particular provisions superfluous or unnecessary." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 459 [279 Cal.Rptr. 834, 807 P.2d 1063].)

We begin with subdivision (a). None of the language in subdivision (a)(1) indicates that the prison term for a nonviolent escape by a misdemeanant must be served consecutively. Indeed, the fact that subdivision (a)(2), subdivision (b)(1), and subdivision (b)(2) each *explicitly* provides that any prison term imposed thereunder must be served consecutively highlights the absence of such a provision from subdivision (a)(1). Therefore, any statutory authority for the proposition that a prison term for a nonviolent escape by a misdemeanant is required to be served consecutively must appear somewhere other than in subdivision (a). The Attorney General directs our attention to subdivision (c)(5).

We immediately encounter the difficulty pointed out by defendant. Subdivision (c)(5) explicitly restricts itself to "[a]ny sentence imposed under *this subdivision.*" (Italics added.) The prison sentence imposed on defendant for her violation of subdivision (a)(1) was not "imposed under" subdivision *(c)*; it was imposed under subdivision *(a).*

A more searching examination of subdivision (c) does not provide any support for the Attorney General's position. Subdivision (c) is composed of an assortment of probation and sentencing provisions divided into five paragraphs, dealing with a variety of subjects. Although subdivision (c)(1) and (3) are concerned exclusively with *felony* escapes from "secure main jail facilit[ies]," subdivision (c)(2) is concerned solely with *misdemeanor* escapes and does not mention "secure main jail facilit[ies]." Subdivision (c)(1), (2), (3), and (4) are aimed at restricting grants of probation, but subdivision (c)(5) has nothing to do with probation. Subdivision (c)(1) and (2) refer to violations of "this section," while subdivision (c)(3), (4), and (5) restrict themselves to "this subdivision."

■ Subdivision (c)(5) is facially limited to requiring that "any sentence imposed under this subdivision" be served consecutively. Only one paragraph of subdivision (c) deals with the "sentence" that may be imposed for an

escape offense.[4] Under subdivision (c)(2), the sentence for a misdemeanor escape must be at least 90 days in jail and not more than one year in jail. Subdivision (c)(5)'s requirement that such a sentence be served consecutively has only a very narrow impact. Subdivisions (a)(2) and (b)(2) already provide that a jail term for a *violent* misdemeanor escape "commence[s] from the time the prisoner otherwise would have been discharged from jail," which obviously requires that such a jail term be served consecutively. Thus, the only "sentence" that is not already required to be served consecutively and is imposed under subdivision (c) is the jail term for a misdemeanor nonviolent escape. ■ Defendant was not given a jail term for a misdemeanor escape but a prison term for a felony escape. Hence, subdivision (c)(5) did not apply to her sentence for the escape count.

The legislative history of section 4532 also provides no support for the Attorney General's position. Subdivision (c) was added to section 4532 in January 1983. (Stats. 1982, ch. 628, p. 2630.) Before the amendment, subdivision (a) provided that the punishment for an escape or attempt to escape without force or violence by a misdemeanant was a prison term "not exceeding one year and one day to be served consecutively" or a county jail term. Subdivision (a) also provided that the prison term for an escape or attempt to escape with force or violence by a misdemeanant was a prison term "of two, four, or six years to be served consecutively" or a county jail term that would commence when the prisoner would otherwise have been released from any other term. Hence, prior to the 1982 amendment, subdivision (a) provided that, where a prison term was imposed for a nonviolent escape by a misdemeanant, a consecutive term was mandatory.

The 1982 legislation that added subdivision (c) to section 4532 originally proposed to amend subdivision (a) to increase the length of the prison term for a nonviolent escape by a misdemeanant to "16 months, or two or three years to be served consecutively" and to eliminate the possibility of a jail term for a violent escape by a misdemeanant. The legislation would have also amended subdivision (b), which governed escapes by felons, to eliminate the possibility of a county jail term. Subdivision (c), as originally proposed, would have provided that probation would not be granted to anyone convicted of violating "this section."

---

[4] The Attorney General argues that defendant's sentence was imposed under subdivision (c) because her escape was from a "secure main jail facility" within the meaning of subdivision (c)(1) and (3). The information did not allege that defendant escaped from a "secure main jail facility." Defendant never admitted that her escape was from a "secure main jail facility," and no evidence was ever presented to the trial court that her escape was from a "secure main jail facility." Hence, neither subdivision (c)(1) nor subdivision (c)(3) could possibly have been applicable here.

In April 1982, the proposed legislation was amended to eliminate all of the proposed changes to subdivisions (a) and (b), and to propose an entirely new subdivision (c). As proposed and adopted, subdivision (c), which contained no paragraphs, provided that probation would not be granted except in unusual cases for felony escapes from a "secure main jail facility," and that misdemeanor escapes from such a facility would be punished by a minimum of a 90-day county jail term. The final sentence of the new subdivision (c) provided that "Any sentence imposed under this subdivision shall be served consecutive to any other sentence in effect or pending." Subdivision (a) continued to require that the prison term for a nonviolent escape by a misdemeanant be served consecutively.

In 1984, another proposal to amend section 4532 was introduced. The purpose of the 1984 legislation, which was sponsored by the Board of Prison Terms, was to eliminate the need for the Board of Prison Terms to set the length of the term for any offense that had previously been punishable by an *indeterminate* term of *up to* one year and one day. This was to be accomplished by replacing the punishment for those offenses with a *determinate* term upon which the prisoner would be eligible for custody credits. The eligibility for custody credits was expected to *reduce* the length of time spent by such prisoners in prison. (Assem. Off. of Research, 3d reading analysis of Sen. Bill No. 1914 (1983–1984 Reg. Sess.) July 3, 1984, p. 2.)

The 1984 legislation, Senate Bill No. 1914 (1983–1984 Reg. Sess.) (Senate Bill 1914), originally proposed to increase the prison term for a nonviolent escape by a misdemeanant by eliminating the "not exceeding one year and one day" prison term and replacing it with a prison term of 16 months, two years, or three years. As originally proposed, Senate Bill 1914 would have retained the requirement that the prison term for a nonviolent escape by a misdemeanant be "served consecutively." (Sen. Bill 1914, as introduced Feb. 15, 1984.) Senate Bill 1914 was later amended to reduce the increase in the prison term to 12 months, 18 months, or two years. The amended bill continued to retain the requirement that the prison term for a nonviolent escape by a misdemeanant be "served consecutively." (Sen. Bill 1914, as amended in the Senate, Mar. 29, 1984.)

Senate Bill 1914 was amended one last time on June 4, 1984. The final amendment set the length of the prison term for a nonviolent escape by a misdemeanant at "a determinate term of one year and one day" and eliminated the existing language requiring that this prison term was "to be served consecutively." (Sen. Bill 1914, as amended in the Assem., June 4, 1984.) This was the version that became law.

This legislative history sheds no light on the Legislature's rationale for eliminating the requirement in subdivision (a) that a prison term for a

nonviolent escape by a misdemeanant be served consecutively, but it is evident that the Legislature did in fact eliminate this requirement in 1984. The Legislature's enactment of the language in subdivision (c)(5) did not evidence any intent to retain this requirement in another form. The language in subdivision (c)(5) was enacted in 1982, when subdivision (a)(1) contained a mandatory consecutive requirement, and the language in subdivision (c)(5) has always been restricted to sentences "imposed under" subdivision (c).

■ " '[I]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.] Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' " (*People v. Pieters* (1991) 52 Cal.3d 894, 898–899 [276 Cal.Rptr. 918, 802 P.2d 420].) Here, no absurd consequences will result from a literal interpretation of section 4532. Until the 1984 amendment of section 4532, the Legislature had provided that *any* prison term imposed under section 4532 was to be served consecutively. The Legislature's elimination of the mandatory consecutive requirement as to the least serious escape offense, a nonviolent escape by a misdemeanant, at the same time that it adjusted the length of the prison term for that offense, can rationally be seen as a reasonable decision to more finely calibrate the punishment to fit the less serious nature of the offense. We cannot deem absurd the Legislature's 1984 amendment of subdivision (a)(1).

■ Consequently, the trial court was laboring under the mistaken belief that it was required to impose a consecutive term for defendant's escape offense. "Where, as here, a sentence choice is based on an erroneous understanding of the law, the matter must be remanded for an informed determination." (*People v. Downey* (2000) 82 Cal.App.4th 899, 912 [98 Cal.Rptr.2d 627].) However, "[i]f the record shows that the trial court would not have exercised its discretion even if it believed it could do so, then remand would be an idle act and is not required." (*People v. Sanders* (1997) 52 Cal.App.4th 175, 178 [60 Cal.Rptr.2d 507], disapproved on another ground in *People v. Fuhrman* (1997) 16 Cal.4th 930, 947, fn. 11 [67 Cal.Rptr.2d 1, 941 P.2d 1189].) The record before us does not disclose whether the trial court would have exercised its discretion to impose a concurrent term if it had known that it had such discretion. Noticeably, the court imposed a concurrent term for the check count even though it was unrelated to the burglary counts for which the principal term was imposed. A remand is appropriate.

## III. Disposition

The judgment is reversed, and the matter is remanded for a new sentencing hearing at which the court shall exercise its discretion to impose either a concurrent term or a consecutive term for the escape count.

Bamattre-Manoukian, Acting P. J., and McAdams, J., concurred.