Filed 4/19/21  P. v. Jones CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B303469 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA474110) |
| v. | |
| RAVON JONES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

Christine Dubois, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, and Charles J. Sarosy, Deputy Attorney General, for Plaintiff and Respondent.

————————————

Ravon Jones robbed a Subway. He held a box cutter to the necks of two employees to get them to open the cash register. A jury convicted him of two counts of second degree robbery. On appeal, Jones challenges only his five-year prior serious felony enhancement. He asks us to remand the case for a new, unbiased judge to consider striking the enhancement.

We affirm. Even though it appears the trial court was mistaken about its discretion to strike the prior serious felony enhancement, the court made clear it would not strike the enhancement even if it could. That ruling ultimately was sound, and remand is unwarranted. We also reject Jones's claim of bias. Undesignated statutory citations are to the Penal Code.

## I

We sketch the underlying facts and procedural history.

## A

On a September evening in 2018, two men entered a Subway sandwich shop. One of the men wore a blue hoodie, purple gloves, and a fanny pack; he carried a green box cutter. The other wore a black hoodie and gloves and had a gun. The robbers used hoods and sunglasses to cover their faces.

They found a store employee and took her cellphone and money. The robber in blue held his box cutter to her neck and ordered her to open the cash register. The robber in black pointed his gun at her back. The employee could not open the register, so the robbers went in search of someone who could.

They found a male employee at the back of the store. The robber in blue put the box cutter close to this man's face and neck. The robbers told him to open the register or they would cut him. This second employee complied.

The robber in blue pulled pepper spray from his waistband and ordered the two employees to get on the floor. His companion took money from the register. The robbers then took some drinks, left the Subway, and drove away in a white Toyota Corolla. The male Subway employee took down the first four digits of the getaway car's license plate.

A security camera videotaped events.

When police arrived at the scene, the female Subway employee was crying, shaking, and in a state of panic.

Within hours, police had arrested Jones at his home, which was roughly a mile away from the Subway. The getaway car was in the driveway. Police tracked him down through the license plate. They learned Jones was on parole. His ankle monitor placed him within 50 feet of the Subway at the time of the robbery.

When he was arrested, Jones was wearing the same ripped jeans, striped polo shirt, and shoes as one Subway robber wore. Jones also wore a fanny pack. Inside were the getaway car keys and a green box cutter.

Police found purple gloves in the trunk of the car and a blue sweater in Jones's room, which resembled the sweater worn by a Subway robber.

B

In February 2019, the People charged Jones with two counts of second degree robbery. The information alleged Jones had two earlier robbery convictions from 1999, which subjected him to sentencing under the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12), and the serious felony enhancement provision (§ 667, subd. (a)(1)).

In March 2019, defense counsel declared a doubt as to Jones's competence.  A psychologist and the court agreed Jones was not mentally competent to stand trial.  Jones was treated at Patton State Hospital and was deemed competent in September 2019.

Trial began two months later in November.  Jones represented himself at first.  After cross-examining one witness, Jones requested—and was provided—counsel.

At trial, the female Subway employee identified Jones as the robber in blue.  She recognized his mouth and "messed up" teeth.

Jones did not testify and presented no evidence.

The jury deliberated for around 20 minutes and found Jones guilty of both robbery counts.

The prosecution sought a sentence of 60 years to life, emphasizing Jones's callous conduct and extensive criminal history.   The probation report similarly recommended the maximum prison sentence.

Several weeks after the jury trial, the trial court found true the allegations regarding Jones's two 1999 robbery convictions and prior strikes.

At this hearing, Jones moved to strike the prior convictions under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.  The trial court partially granted the motion and struck one of Jones's prior strikes.  The court reasoned these robbery convictions arose from a single incident and the sentences were concurrent.

The trial court then sentenced Jones to 17 years in state prison, broken down as follows:  10 years for count 1 (the high term of five years doubled under the Three Strikes law), plus a

consecutive term of two years for count 2 (one-third the midterm of three years, doubled), plus five years for the prior serious felony enhancement.

In choosing the high term for Count 1, the court remarked Jones had "earned" this term and "[h]is conduct is escalating. He's a habitual criminal. And the fear that he placed each of these victims in was, you know, outrageous."

II

Jones claims remand is required for the trial court to exercise the discretion provided by Senate Bill No. 1393 (2017–2018 Reg. Sess.). This bill amended sections 667 and 1385 and gave courts discretion to strike prior serious felony enhancements. The changes became effective January 1, 2019. (See *People v. Stamps* (2020) 9 Cal.5th 685, 693, 701–702 [discussing this legislative change].)

The trial court sentenced Jones in November 2019. But apparently neither Jones's trial counsel, the prosecutor, the trial court, nor Jones's appellate counsel were aware of the court's discretion to strike the enhancement.

When imposing the enhancement, the trial court stated:

"The court is also going to impose the 667 prior, and that's an additional five years.

"At this point, the court does not have the discretion to strike it, but I will note, if for some reason in the future, the court did have the discretion to strike it, I would in no way, shape, or form strike it for Mr. Jones. Mr. Jones is a menace to our society, he wreaks havoc on everybody that he comes across. And this court, in no uncertain terms, even if I had the discretion, wouldn't strike it.

5

"So I'm telling that to any appellate court that wants to look at it, just in case the law might change yet again."

It appears the court was mistaken about its discretion to strike the enhancement. But when a trial court is unaware it has the discretion to reduce a sentence, remand is unnecessary where the court clearly shows it would not have reduced the sentence if it had such discretion. (*People v. Almanza* (2018) 24 Cal.App.5th 1104, 1110); see also *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [where trial court was unaware of the scope of its discretionary powers, remedy is remand for resentencing unless the record clearly indicates the court would have reached the same conclusion had it been aware of its discretion].)

The trial court's statement was unambiguous. Remand would be pointless.

Jones acknowledges this fact but attacks the basis for the court's decision not to strike the enhancement. Essentially, Jones claims his crimes were not that bad and speculates the court must have been influenced by earlier "disturbing behavior" unrelated to his criminal behavior. Jones points to a pro per petition for writ of habeas corpus he filed in May 2019, shortly after he was declared incompetent, in which he reported filing a sexual harassment complaint against his appointed attorney for allowing the appointed psychologist to make lewd and improper requests of him.

There is no evidence this episode poisoned the trial court against Jones for purposes of sentencing.

First, a different judge was presiding over Jones's case during this episode, and there is no sign the sentencing judge was aware of it when sentencing Jones more than five months later.

6

Second, the sentencing judge had presided over Jones's jury trial. Jones's trial counsel conceded one of the victims had been "terrorized."

Third, when sentencing Jones, the court had before it the People's sentencing memorandum and the probation report. The court was aware Jones had an extensive criminal history—or as his appellate counsel concedes, Jones had been "in and out of prison" for the past 20 years and his past convictions "certainly indicate a disregard for lawful behavior."

Focusing on the period after his 1999 robbery convictions, Jones's criminal history includes convictions for assault with a deadly weapon, prisoner in possession of a weapon, and bringing contraband into prison; two convictions for evading police; and four convictions for indecent exposure. Jones had served prison terms in five different cases. He was on parole at the time of the Subway robberies. His ankle monitor did not deter him.

The trial court said it "would in no way, shape, or form" strike the prior serious felony enhancement if it had discretion to do so. The court had ample basis for this view. (See Cal. Rules of Court, rule 4.428(b) [when deciding whether to strike enhancements, courts may consider, among other things, "the accurate reflection of the defendant's criminal conduct on his or her record" and "any other relevant consideration"].)

Remanding the case is unnecessary. (See *People v. Gamble* (2008) 164 Cal.App.4th 891, 901 (*Gamble*) [where sentence is based on an erroneous understanding of the law, remand for " 'informed determination' " is required unless the record shows the trial court would not have exercised its discretion even if it believed it could]; see also *People v. Jones* (2019) 32 Cal.App.5th 267, 273–275 [no remand where

record was clear trial court would not exercise discretion to strike enhancement].)

III

Jones urges us to remand this case to a new and unbiased judge.  He points to the trial court's "vehement statements" at sentencing and supposed "inappropriate attempt" to sway this appeal as evidence of the court's impartiality.

To the extent Jones implies judicial bias tainted the sentencing proceedings, this claim lacks merit.

Jones did not move to disqualify the trial judge under the Code of Civil Procedure and therefore forfeited any statutory claim of judicial bias.  (See *People v. Peoples* (2016) 62 Cal.4th 718, 786–787 (*Peoples*).)

As for a constitutional claim of bias, only the most extreme facts justify judicial disqualification based on the due process clause.  (*Peoples, supra,* 62 Cal.4th at pp. 787–788.)

The record shows no probability of actual bias and no extreme facts.  (See *Peoples, supra,* 62 Cal.4th at pp. 787–788.)

It is not wrong or unusual for trial judges to make statements for the benefit of appellate review.  (E.g., *Gamble, supra,* 164 Cal.App.4th at p. 895.)  It is common for trial courts to state what actions they would or would not take if they had sentencing discretion.  (E.g., *People v. Venegas* (2020) 44 Cal.App.5th 32, 41.)  The trial court did not violate its duty of impartiality by making these statements.

8

## DISPOSITION

The judgment is affirmed.

WILEY, J.

WE CONCUR:

BIGELOW, P. J.

GRIMES, J.