Filed 10/26/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>KALI PONDER<br><br>        Defendant and Appellant. | A166053<br><br>(Alameda County Super. Ct. No. 617371) |

This is an appeal after we remanded a matter for resentencing. In 2019, a jury found defendant Kali Ponder guilty of second degree murder, assault with a firearm, and shooting at an inhabited building and found various firearm enhancements true. Defendant was 18 years old and a senior in high school when he committed the offenses.

At sentencing, defendant moved to strike all the firearm enhancements in the furtherance of justice pursuant to Penal Code[1] section 1385. The trial court made extensive findings regarding defendant's neurodevelopmental disorders, immaturity, and history of trauma and relied on these findings to strike the enhancement for the assault offense, but declined to strike the 25-year-to-life enhancement under section 12022.53, subdivision (d) (§ 12022.53(d)), associated with the murder conviction. Defendant was sentenced to 40 years to life in prison.

---

[1] Undesignated statutory references are to the Penal Code.

1

In a prior appeal, we concluded the trial court abused its discretion in denying the motion to strike the firearm enhancement under section 12022.53(d) for the murder conviction given its findings of considerable defendant-related mitigating circumstances and remanded the matter for resentencing. (*People v. Ponder* (Dec. 22, 2021, A159260) 2021 WL 6059119, at *1, *11–12.)

On remand, the trial court struck the 25-year-to-life enhancement under section 12022.53(d) and instead imposed the lesser included enhancement of 10 years. As a result, defendant was resentenced to 25 years to life in prison.

Defendant now appeals from the new sentence. He contends the trial court failed to follow recent amendments to the sentencing laws, specifically section 654 (as amended by Assembly Bill No. 518 (2021-2022 Reg. Sess.) (A.B. 518)) and section 1385 (as amended by Senate Bill No. 81 (2021-2022 Reg. Sess.) (S.B. 81)). Finding no reversible error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Underlying Offenses, Motion to Strike Enhancements, and First Appeal*

In April 2016, Lakeya Venson and her fiancé Lavon Mitchell were at a house party celebrating the birthdays of two young family members, including Venson's 11-year-old daughter, when a car pulled up, and defendant got out and started shooting. At trial, defendant admitted he shot and killed Venson and shot at Mitchell but claimed he was reacting to a man pulling a gun on him.

Defendant was convicted of second degree murder (count 1), assault with a firearm (count 2), and shooting at an inhabited building (count 3). The jury found, for counts 1 and 3, that he personally discharged a firearm

2

causing death (§ 12022.53(d)) and, for count 2, that he personally used a firearm (§ 12022.5, subd. (a)).

At his original sentencing, defendant supported his motion to strike the firearm enhancements with voluminous records, including evidence showing, as we characterized it, that "he grew up with domestic violence and substance abuse in the home, he was himself the victim of violence, his father was murdered when he was 11 or 12, and he had a history of low cognitive ability and brain-based deficits that affected his executive functioning and decision making." (*Ponder*, *supra*, 2021 WL 6059119, at p. *1.) An evaluating psychologist diagnosed defendant with atypical depressive disorder and documented defendant's history of neurodevelopmental disorder, ADHD, and learning disability. (*Id*. at pp. *3, 9–10.) In addition, three jurors submitted letters "urg[ing] leniency in sentencing based on defendant's life circumstances, including his age, background of trauma, mental capacity, and ADHD diagnosis." (*Id*. at p. *8.)

The trial court (Hon. Rhonda Burgess) denied the motion to strike the enhancement for count 1 but did strike the enhancement for count 2, citing " 'several factors and circumstances in mitigation which relate to the defendant's background, individual life circumstances, and the nature of the present offense.' " (*Ponder*, *supra*, 2021 WL 6059119, at p. *10.) The court noted defendant was 18 years old at the time of the offense, he had " 'history of neuro-developmental disorder . . . from as early as first grade' " and " 'overall borderline low-to-average intellectual ability with weaknesses in executive functioning,' " and a family history that included " 'significant family dysfunction and adverse childhood experiences and trauma.' " (*Ibid*.) The court stated it also considered research (described by the defense psychologist) regarding " 'immature brain development in adolescence

3

between the ages of 12 and 25 and [the] relationship of incomplete brain development to functional maturity and decision making.' " (*Ibid.*)

Defendant was sentenced to 40 years to life in prison for count 1, comprising 15 years to life for murder and a consecutive 25 years to life for the firearm enhancement. After striking the firearm enhancement associated with count 2, the trial court imposed concurrent determinate terms for counts 2 and 3 and stayed the firearm enhancement for count 3 pursuant to section 654.

In defendant's first appeal, we concluded, "given the trial court's own express findings regarding the constellation of issues and circumstances affecting defendant (including his immaturity, neurodevelopmental deficits, and traumatic upbringing) and its determination that the interest of justice would be served by striking the firearm enhancement in connection with count 2, . . . this [wa]s the rare case where the court's ruling falls outside the bounds of reason." (*Ponder, supra*, 2021 WL 6059119, at p. *11.) Therefore, we remanded the matter for the court to reconsider its sentence.

*Resentencing on Remand*

At the resentencing hearing held August 29, 2022, the trial court (Hon. Morris Jacobson) adopted the findings made by the original sentencing court as to defendant-related mitigating factors. The court also considered the aggravating factors the original sentencing court found: the crime involved great violence, the victim was particularly vulnerable, defendant engaged in violent conduct indicating a serious danger to society, and defendant's previous sustained juvenile adjudications were of increasing seriousness.[2]

---

[2] At the original sentencing hearing, the trial court observed that defendant's offense of shooting "at a house full of children and adults" involved "the threat of additional bodily harm" and that the "victims were

4

Balancing the mitigating and aggravating factors, the trial court replaced the 25-years-to-life enhancement for personal and intentional *discharge* of a firearm *causing* great bodily injury or *death* under section 12022.53(d) with the lesser included enhancement of 10 years for personal *use* of a firearm under subdivision (b) of the same statute. Thus, defendant's sentence was reduced to 25 years to life in prison.

Defendant timely appealed.

## DISCUSSION

A. *Remand is Not Required Under A.B. 518*

Defendant contends the trial court misunderstood the scope of remittitur and that we should again remand so the court can consider the effect of A.B. 518 (which amended section 654) in resentencing him.

When defendant was originally sentenced in December 2019, section 654, subdivision (a), specified that "[a]n act or omission that is punishable in different ways by different provisions of law *shall be punished under the provision that provides for the longest potential term* of imprisonment, but in no case shall the act or omission be punished under more than one provision." (Former § 654, subd. (a), as amended by Stats. 1997, ch. 410, § 1, italics added.) Effective January 1, 2022, A.B. 518 "amended section 654 by removing the requirement that a defendant be punished under the provision providing for the longest term of imprisonment, and granting the trial court discretion to impose punishment under any applicable provision." (*People v. Fugit* (2023) 88 Cal.App.5th 981, 995.)

In briefing filed in May 2022 in advance of the resentencing, defense counsel asserted the original sentencing court "found that his convictions for

particularly vulnerable as they were at home, they were enjoying a child's birthday celebration."

5

assault with a firearm as charged in count three [*sic*] were [*sic*] part of the same course of conduct as the murder," and the trial court now "has the discretion to impose punishment on any of these three counts, not necessarily the 15 to life term for the second-degree murder."[3]

The trial court determined that it could not reach defendant's argument regarding A.B. 518 on remand because considering section 654 was "outside the scope of the remittitur." But the court also concluded it would not change the sentence even if it could apply newly amended section 654. At the resentencing hearing, the court stated, "I would like the record to reflect that if I had the option under 654, I would still impose punishment under the murder conviction and not the assault or the shooting into an occupied dwelling based on the gravity of the case. The primary harm in this case was the murder of Lakeya Venson." "So if the remittitur permitted me to go into 654, I would not substitute one of the other charges in place of the murder."

Despite the trial court's clear statement that it would not change the sentence under section 654 as amended by A.B. 518, defendant claims "remand is still required" because of the court's "misunderstanding of the applicability of the new sentencing laws." Defendant does not explain his position, which is contrary to case law. It is well-recognized that " '[i]f the record shows that the trial court would not have exercised its discretion even

---

[3] Initially, we observe that defense counsel was mistaken. The original sentencing court did not stay the punishment for either the assault of Mitchell with a firearm (count 2) or the shooting at an inhabited dwelling (count 3) and did not find that either of these offenses was the same act or omission as the murder of Venson (count 1) for purposes of section 654. The court found only that the firearm enhancement under section 12022.53(d) for intentional discharge causing death associated with count 3 was "incidental to the defendant's act and intent to commit the offense in count [1]," and it therefore stayed the *enhancement* to count 3 pursuant to section 654.

6

if it believed it could do so, then remand would be an idle act and is not required.' " (*People v. Gamble* (2008) 164 Cal.App.4th 891, 901; *People v. McDaniels* (2018) 22 Cal.App.5th 420, 425 [quoting *Gamble*]; *People v. Cervantes* (2021) 72 Cal.App.5th 326, 331 [same]; see *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, 1896 [where "the trial court indicated that it would not, in any event, have exercised its discretion to lessen the sentence," "no purpose would be served in remanding"].) Here, the record unmistakably shows the trial court would not sentence defendant differently if it believed A.B. 518 applied. Under this circumstance, remand serves no purpose.

B.     *Remand is Not Required Under S.B. 81*

In 2021, the Legislature enacted S.B. 81, which amended section 1385 to specify mitigating circumstances a trial court must consider when deciding whether to strike an enhancement in the furtherance of justice. (*People v. Lipscomb* (2022) 87 Cal.App.5th 9, 16 (*Lipscomb*).) Defendant contends the trial court erred in applying section 1385 as amended.

1.     <u>Background</u>

Section 1385, subdivision (c)(1), now provides, "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Section 1385, subdivision (c)(2) (§ 1385(c)(2)), provides, "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the

enhancement would result in physical injury or other serious danger to others."

As relevant to this appeal, section 1385(c)(2)'s list of mitigating circumstances includes:

"(C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed.

"(D) The current offense is connected to mental illness.

"(E) The current offense is connected to prior victimization or childhood trauma." (§ 1385(c)(2)(C)–(E).)[4]

On remand, defendant urged the trial court to strike the firearm enhancement associated with count 1 outright because the offense was connected to prior victimization, childhood trauma, and mental illness and application of the enhancement would result in a sentence over 20 years. He filed numerous supporting exhibits, including the evaluating psychologist's report, school and institutional records, and probation reports filed in juvenile court. Defendant further argued that striking the enhancement would not endanger public safety because he would still receive a sentence of 15 years to life for the murder conviction and "[a]ny release would be dependent on the parole board agreeing that he is *not a risk to public safety*."

The prosecution asked the court to replace the 25-year-to-life term under section 12022.53(d) with the lesser included enhancement of 20 years

---

[4] Other mitigating circumstances listed in section 1385(2)(2) are "(A) [a]pplication of the enhancement would result in a discriminatory racial impact . . . ."; "(B) [m]ultiple enhancements are alleged in a single case. . . ."; "(F) [t]he current offense is not a violent felony . . . ."; "(G) [t]he defendant was a juvenile when they committed the current offense . . . ."; "(H) [t]he enhancement is based on a prior conviction that is over five years old"; and "(I) [t]hough a firearm was used in the current offense, it was inoperable or unloaded."

for personal and intentional discharge of a firearm (*id.*, subd. (c)), relying on the circumstances of the shooting and defendant's postconviction conduct in prison. The prosecution described how defendant used a gun "to kill Lakeya, assault Lavon Mitchell, and put holes in the house where Lakeya and Lavon were supervising a slumber party with kids from five to fifteen years old," resulting in "Lakeya, a mother of three, d[ying] in her own mother's arms as her sister . . . looked on." The prosecution provided prison records showing defendant was a "risk Level IV" in prison[5]; in July 2020, he was found guilty of being involved in a fight; in May 2021, he was found guilty of participating in a riot; and in September 2021, he was found to have delayed a peace officer.

At sentencing, the trial court went through each of the section 1385(c)(2) mitigating factors. The court agreed with defendant that the mitigating circumstances of section 1385(c)(2)(D) and (E) (relating to "mental illness" and "prior victimization or childhood trauma," respectively) apply in this case. But the court found section 1385(c)(2)(C)—that the "enhancement could result in a sentence of over 20 years"—did not apply. The court reasoned, "15-to-life I think is a sentence that's already over 20 years based on the life top possibility. So that's not a factor here."

The trial court then stated its ruling, explaining: "When I balance this out, what I find is that the appropriate sentence—when I apply that information against the aggravating factors that I see here, and when I consider the amount of harm that was caused in this case as well as the sort

---

[5] Prison records also showed defendant's classification placement score went up from an initial score of 60 in April 2020 to 74 in February 2022. " 'A lower placement score indicates lesser security control needs and a higher placement score indicates greater security control needs.' " (*In re Jenkins* (2010) 50 Cal.4th 1167, 1173–1174.)

of bad start that Mr. Ponder had to his life, the mitigation that's there, I'm going to impose sentence pursuant to 12022.53(b), and I'm going to reduce the enhancement to ten years and add that to the 15-to-life for a total of 25 years to life.

"I've given an enormous amount of thought over a number of months. . . . I've taken a deep dive on this case and thought about the equities and what the court of appeal indicated in their opinion, the mitigating evidence that was produced, what the meaning of that is, the harm, the incalculable harm, the harm that cannot be cured to the family of Lakeya Venson. And when I factor all of that together, what I find is appropriate, the appropriate amount of reduction in mitigation is . . . ten years in the state prison to be added to the 15-to-life."

### 2. Analysis

Defendant contends the matter must be remanded for resentencing again because the trial court failed to decide whether dismissing the enhancement would endanger public safety. He argues that once the court found mitigating circumstances related to his neurodevelopmental deficits, youth, and history of childhood trauma, section 1385(c)(2) *required* dismissal of the firearm enhancement (without imposition of any lesser included enhancement) *unless* the court found dismissal would endanger public safety.

There is a split of authority on this issue. *People v. Walker* (2022) 86 Cal.App.5th 386, review granted March 22, 2023, S278309 (*Walker*) supports defendant's position. There, the Second District Court of Appeal, Division Two, "conclude[d] that section 1385's mandate to 'afford great weight' to mitigating circumstances erects a rebuttable presumption that *obligates* a court to dismiss the enhancement *unless* the court finds that dismissal of that

enhancement—with the resulting shorter sentence—would endanger public safety." (*Id.* at p. 391, italics added.)[6]

The Sixth District Court of Appeal, however, disagreed with *Walker*'s reading of section 1385(c)(2) in *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098, review granted April 12, 2023, S278894 (*Ortiz*). The court explained: "In our view, the ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement. To be sure, the Legislature has invested the enumerated mitigating circumstances with great weight . . . . But this does not preclude a trial court from determining that countervailing factors—other than the likelihood of physical or other serious danger to others—may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice." (*Id.* at p. 1098.)

The *Ortiz* court based its interpretation on the statute's plain language and legislative history: "The plain language of section 1385(c)(2) contemplates the trial court's exercise of sentencing discretion, even as it mandates that the court give 'great weight' to evidence of enumerated factors. The legislative history of Senate Bill 81 reflects that this was no accident: the language of section 1385(c)(2) as enacted replaced proposed language that would have mandated 'a presumption that it is in the furtherance of justice to dismiss an enhancement' that could only 'be overcome by a showing of clear

---

[6] Our high court granted review in *Walker* to consider the following issue: "Does the amendment to Penal Code section 1385, subdivision (c) that requires trial courts to 'afford great weight' to enumerated mitigating circumstances (Stats. 2021, ch. 721) create a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety?" (*People v. Walker* (Cal. 2023) 305 Cal.Rptr.3d 665 [525 P.3d 639].)

and convincing evidence that dismissal of the enhancement would endanger public safety.' (See Sen. Bill No. 81 as amended August 30, 2021; see also Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 81 (2021-2022 Reg. Sess.) as amended Aug. 30, 2021, at p. 2 [reflecting that Assembly amendments to Sen. Bill No. 81 '[r]emove[d] the presumption that it is in the interests of justice to dismiss an enhancement when specified circumstances are found to be true and instead provide[ ] that the court shall, in exercising its discretion to dismiss an enhancement in the interests of justice, consider and afford great weight to evidence of those specified circumstances'].) Had the Legislature intended to establish a rebuttable presumption . . ., it could have approved the language of the earlier version of the bill. We are unable to ignore the fact that it did not." (*Ortiz*, *supra*, 87 Cal.App.5th at pp. 1096–1097.)

We also have had occasion to consider the legislative history of S.B. 81. In *Lipscomb*, *supra*, 87 Cal.App.5th at page 20, we noted that the bill's author, in a letter to the Secretary of the Senate intended to provide clarity on the legislator's intent, wrote: " '[A]mendments . . . remove the presumption that a judge must rule to dismiss a sentence enhancement if certain circumstances are present, and . . . replaces that presumption with a "great weight" standard where these circumstances are present. The retention of the word "shall" in Penal Code § 1385(c) . . . should not be read as a retention of the previous presumption language—*the judge's discretion is preserved* in Penal Code § 1385(c)(2).' " (Some italics omitted.)

Considering the plain language of the statute and the legislative history, we reject defendant's argument that section 1385(c)(2) requires dismissal of an enhancement when a mitigating circumstance is present unless the sentencing court finds dismissal would endanger public safety.

12

Instead, we agree with *Ortiz* that the court retains discretion under section 1385(c)(2) to choose not to dismiss the enhancement in the furtherance of justice for reasons other than public safety.

Defendant also argues the trial court erred in finding section 1385(c)(2)(C)—that " ' "[t]he application of an enhancement could result in a sentence of over 20 years," ' "—does not apply. Defendant does not explain why he believes section 1385(c)(2)(C) does apply.[7] But we need not decide the issue because even assuming it applies, defendant does not attempt to show prejudice, and we discern none.

The ultimate question before the trial court was whether it was in the furtherance of justice to dismiss the enhancement. (*Ortiz, supra*, 87 Cal.App.5th at p. 1098.) Here, the record shows the trial court was aware of its discretion and the mitigating circumstances it was required to consider under section 1385(c)(2) as amended by S.B. 81. The court explained it had

---

[7] Defendant is subject to punishment of 15 years to life for the murder conviction (count 1). Presumably, defendant would argue that application of the lesser included firearm enhancement of 10 years under section 12022.53, subdivision (b), "could" result in a sentence over 20 years, since it is possible defendant could be granted parole after serving 15 years in prison for count 1 but for the additional determinate term of 10 years. Defendant's interpretation would mean that application of any enhancement under section 12022.53 is automatically a mitigating circumstance whenever the underlying offense. (See § 190, subd. (a).)

The Attorney General argues, however, that it is not the determinate enhancement that results in a sentence over 20 years; it is the indeterminate life term for the murder that results in the long sentence because the life term begins to run *after* the determinate term. This argument relies on section 669, subdivision (a), which provides, "Whenever a person is committed to prison on a life sentence which is ordered to run consecutive to any determinate term of imprisonment, the determinate term of imprisonment shall be served first . . . ."

"given great weight to the findings that the [original] trial court made" regarding mitigating circumstances and gave "an enormous amount of thought over a number of months" about the appropriate sentence. It "thought about the equities," "the mitigating evidence that was produced, what the meaning of that is," along with the aggravating factors, and determined that "the appropriate amount of reduction in mitigation" was reducing the firearm enhancement from 25 years to life to 10 years.

Clearly, the trial court considered all the mitigating circumstances related to defendant and gave great thought to whether to dismiss the firearm enhancement. We see no abuse of discretion, and, indeed, defendant does not claim the trial court abused its discretion. Moreover, on this record, we cannot say it is reasonably probable the trial court would have reached a different result if it believed the mitigating circumstance of section 1385(c)(2)(C) also applied. (See *People v. Avalos* (1984) 37 Cal.3d 216, 233 [remand for sentencing error is required only where it is reasonably probable a result more favorable to the defendant would have been reached absent the error].)

## DISPOSITION

The judgment is affirmed.

 

                                 _____\
                                 Miller, J.

WE CONCUR:


_____\
Stewart, P.J.


_____\
Richman, J.


A166053, *People v. Ponder*

15

Court:  Alameda County Superior Court

Trial Judge:  Hon. Morris Jacobson

Marylou Hillberg, under appointment by the Court of Appeal, for Defendant and Appellant

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Melissa A. Meth, Victoria Ratnikova, Deputy Attorneys General, for Plaintiff and Respondent

A166053, *People v. Ponder*