Filed 5/28/21  P. v. Spikes CA1/2
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DEMOND ANTHONY SPIKES,<br><br>        Defendant and Appellant. | A159486<br><br>(San Mateo County<br>Super. Ct. No. SC082799) |

Defendant Demond Anthony Spikes was convicted of first degree murder, shooting at an inhabited dwelling, and felon in possession of a firearm.  He was sentenced to 124 years to life in prison, which included two 25-year-to-life enhancements for discharging a firearm causing great bodily injury or death under Penal Code section 12022.53, subdivision (d).[1] Defendant appealed, and in June 2019, we affirmed the judgment of conviction.  But, based on a change in the law, we remanded the case for the sole purpose of allowing the trial court to exercise its discretion under subdivision (h) of section 12022.53 whether to strike the enhancements imposed for discharging a firearm.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

1

At resentencing, the trial court declined to strike the firearm enhancements and reimposed defendant's original sentence. Defendant appeals again. He argues that the trial court's refusal to strike the enhancements was an abuse of discretion. Alternatively, defendant requests a second remand, asserting the trial court failed to recognize that it had the discretion to replace each of the enhancements under 12022.53, subdivision (d) with a lesser enhancement under subdivision (b) or (c). We reject defendant's arguments and affirm the judgment.

## BACKGROUND[2]

### The Facts

In the early morning hours of April 13, 2014, defendant escorted Brigid Palmer to the home of Marcus Brackinridge, who lived with his parents, Eugene Brackinridge and Sandra Alexander.[3] Palmer engaged in an act of prostitution with Marcus.

Defendant—Palmer's pimp—was sitting in a car out in front of the Brackinridges' home, when he received a text from Palmer, who was having trouble because the client would not let her leave. Defendant then went into the backyard of the Brackinridge house, where he encountered Marcus.

Eugene and Alexander were awakened and got up to see what was going on in their backyard. Standing by the door leading to the backyard, Eugene and Alexander witnessed defendant stand over Marcus and fire a gun multiple times, shooting Marcus at close range. When Alexander yelled,

---

[2] The facts of the offenses and part of the procedural history in this case are set forth in our prior opinion (*People v. Spikes* (June 21, 2019, A148920, A149766) [nonpub. opn.] (*Spikes*)), which is included in the clerk's transcript. We summarize the relevant facts from that opinion.

[3] To avoid confusion, we refer to Marcus and Eugene by their first names.

"Don't shoot my son," defendant turned the gun towards her and shot her in the leg. Alexander began bleeding heavily. Marcus died shortly thereafter from two gunshot wounds, one to the left side of his torso and one to his forehead.

At trial, four women testified about their experiences working, or being solicited to work, as prostitutes for defendant. One of them testified defendant would get "[v]ery violent" with her if she disobeyed him or did not bring him the amount of money he expected after prostituting herself. Defendant also told her that Palmer would rob her clients and do "crazy things" and he would have to save her, having physically fought her clients many times.

The trial court also heard an FBI agent's expert testimony on pimping and prostitution. The agent testified that a pimp manipulates and exploits a prostitute to make money for himself. The pimp usually remains in the area while the prostitute meets with the client, in part to provide security if needed. A pimp "wants to protect his commodity as he sees these prostitutes." Pimps demand loyalty from their prostitutes, often physically assaulting a prostitute who is not loyal or has a bad attitude.

**The Proceedings Below**

An information filed in February 2015 charged defendant with four felonies: the murder of Marcus (§ 187); the deliberate and premeditated attempted murder of Alexander (§§ 187, 189, 664); shooting at an inhabited dwelling (§ 246); and felon in possession of a firearm (§ 29800, subd. (a)(1)). The information also alleged that defendant discharged a firearm causing death or great bodily injury in counts one through three (§ 12022.53, subd. (d)), had suffered one prior juvenile robbery adjudication (§ 1170.12, subd. (c)(1)), and had served two prior prison terms (§ 667.5, subd. (b).)

3

Following a trial in May and June 2016, a jury found defendant guilty of first degree murder, shooting at an inhabited dwelling, and unlawful possession of a firearm, and not guilty of attempted murder. It found true the firearm enhancement allegations as to the murder and shooting at an inhabited dwelling charges. The trial court found true the prior robbery and one of the prior prison term allegations.

Defendant was sentenced to an aggregate term of 124 years to life in state prison, which included 25 years to life for each of the section 12022.53, subdivision (d) enhancements.

Defendant appealed the judgment of conviction (No. A148920).[4]

**The First Appeal**

In his first appeal, defendant asserted multiple claims of error, and on June 21, 2019, we filed our unpublished opinion rejecting all but one of those claims: that the matter must be remanded for resentencing to allow the trial court to exercise its discretion with regard to section 12022.53 enhancements in light of a recent amendment to the statute that makes the imposition of the enhancements discretionary.

During the pendency of the appeal, the Governor signed Senate Bill No. 620, effective January 1, 2018, which amended section 12022.53 to give the trial court the authority to strike in the interests of justice a firearm allegation found true under that statute. (Stats. 2017, ch. 682, § 2.) Defendant asserted that the amendment applied to him because his case was not yet final, and that the matter had to be remanded to afford the trial court

---

[4] Defendant separately appealed the restitution order awarding $223,998.18 to Alexander (No. A149766). We consolidated the two appeals but later dismissed appeal No. A149766 after finding defendant had abandoned his challenges to the restitution order.

the opportunity to exercise its discretion to strike the firearm enhancement that was no longer mandatory under section 12022.53.

The People agreed with defendant, as did we. We therefore remanded the matter for the sole purpose of allowing the trial court to exercise its discretion under subdivision (h) of section 12022.53. In all other respects, we affirmed the judgment of conviction.

**Resentencing**

Before the resentencing hearing on November 22, 2019, defendant filed a sentencing memorandum, asking the trial court to strike both of his firearm enhancements, which would reduce his sentence to 74 years to life. Defendant noted he would soon turn 40 years old and "desperately hopes that some day he may rejoin" his children. He also asserted he had "been a model prisoner," having received only one disciplinary write-up, while focusing his time on studying accounting and business.

The People filed an opposition. In discussing "the scope of the Court's discretion," the opposition cited two appellate court decisions—*People v. Morrison* (2019) 34 Cal.App.5th 217 (*Morrison*) and *People v. Tirado* (2019) 38 Cal.App.5th 637 (*Tirado*), review granted Nov. 13, 2019, S257658— illustrating a split in authority on whether a trial court in a resentencing hearing under Senate Bill No. 620 may reduce an enhancement to a lesser-included, but uncharged, enhancement. *Morrison* answered this question in the affirmative (*Morrison, supra*, 34 Cal.App.5th at pp. 221–225); *Tirado* disagreed with *Morrison* and held a court has such discretion only when a lesser enhancement was charged and found to be true (*Tirado, supra*, 38 Cal.App.5th at p. 644). The People urged the trial court to follow *Tirado* and deny defendant's request to strike the firearm enhancements.

The opposition focused on defendant's status as "a career criminal." It recounted defendant's prior convictions dating back to 1998, which included robbery and possession by a felon of firearms. The opposition also highlighted defendant's employ as a pimp, who has engaged in trafficking and inflicting violence against women for financial gain. The People asserted that the underlying crimes in this case were "an unsurprising extension of the defendant's criminal lifestyle."

Turning to the gravity of the underlying crimes, the People explained: "To the horror of Mr. Brackinridge's onlooking mother, the defendant then shot Marcus Brackinridge almost right between the eyes in the forehead. In response to the murder of her son, Ms. Alexander screamed causing the defendant, with complete disregard of the consequences to human life, to fire a round in her direction striking her in the upper thigh and nearly killing her."

Based on defendant's criminal history, the "double shooting" of Marcus and Alexander, and the absence of mitigating factors, the People argued that certain factors relevant for sentencing—"[p]rotecting society," "[p]unishing the defendant," and "[d]eterring others from criminal conduct"—weigh in favor of denying the request to strike the firearm enhancements and imposing the maximum punishment. (Cal. Rules of Court, rule 4.410(a)(1), (2) & (4).)[5]

The trial court conducted the resentencing hearing on November 22, 2019. It noted it had read the parties' briefs before hearing arguments from both sides. The district attorney argued along the lines discussed in the opposition to the sentencing memorandum. The district attorney added, "So I think that the original sentence that the court gave was, in fact, despite the

[5] All further rule references are to the California Rules of Court.

enormity of the number and the enormity of the sentence, a proportionate response to the brutality of the violence that underlies the crime."

The trial court then heard from Alexander, who stated, "I want [defendant] in jail the time you gave him, 124 to life. That's what I want." Alexander continued, defendant "shot my son twice. Once here when he knocked on the door and shot my son here and paralyzed him and then he shot him in his head. And he shot me. So somebody who was shooting a gun like that never needs to be out on the streets. Never." Alexander stated she had almost bled to death from her gunshot wound.

Defense counsel argued the trial court should strike the firearm enhancements because the result of reducing defendant's sentence to 74 years to life would not amount to a "slap on the wrist," but rather "a very serious, almost life without the possibility of parole sentence on [defendant]."

The trial court also heard from defendant. He addressed Alexander and the Brackinridge family, stating, "I give my deepest regards. And if it wasn't for the fact that I have children of my own, I'd be willing to suffer any persecution that will bring her and her family silence just because I now see the pain in a mother and in a human being."

Ultimately, the trial court declined to strike the section 12022.53 enhancements. It imposed defendant's original sentence of 124 years to life in state prison, which included 25 years to life for each of the section 12022.53 enhancements. [6]

Defendant appealed again.

---

[6] The clerk's transcript does not contain a minute order or an abstract of judgment for the November 22, 2019 hearing.

## DISCUSSION

### The Trial Court Did Not Abuse Its Discretion in Declining to Strike the Firearm Enhancements

Defendant argues that the trial court abused its discretion in refusing to strike the firearm enhancements pursuant to 12022.53, subdivision (h). We disagree.

" 'A court's discretionary decision to dismiss or to strike a sentencing allegation under section 1385 is' reviewable for abuse of discretion. [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 373.) " ' "The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary." ' [Citation.]" (*Id.* at p. 376.) In determining whether a trial court has acted irrationally or arbitrarily in refusing to strike an enhancement, we consider the legal principles and policies that should have guided the court's actions. (See *id.* at p. 377; *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 [" ' "The discretion of a trial judge . . . is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown . . ." ' "].) A " ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.]" (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.)

We find no abuse of discretion here. "In addition to the factors expressly listed for determining whether to strike enhancements listed in California Rules of Court, rule 4.428(b), the trial court is also to consider the factors listed in . . . rule 4.410 (listing general objectives in sentencing), as well as circumstances in aggravation and mitigation under . . . rules 4.421 and 4.423." (*People v. Pearson* (2019) 38 Cal.App.5th 112, 117 (*Pearson*).)

8

Among other factors the court may have considered were that "[t]he crime involved great violence, great bodily harm . . . , or other acts disclosing a high degree of cruelty, viciousness, or callousness"; that "[t]he defendant was armed with or used a weapon at the time of the commission of the crime"; and that "[t]he defendant has engaged in violent conduct that indicates a serious danger to society." (Rule 4.421(a)(1)–(2), (b)(1).)

The record reflects that the trial court *did* consider these factors. The trial court referred to the murder of Marcus as "gratuitous, unnecessary, uncalled for" and expressed "in the course of 32 years as a judge, almost that many murder cases, . . . this one was one of the most aggravated that I heard." The trial court also found that "the whole situation was totally aggravated by the defendant's wanton and disgraceful shooting of Ms. Alexander, who was just standing . . . at her bedroom window trying to figure out what was going on in the backyard and almost caused her death." It then observed, "defendant's criminal lifestyle before even these crimes was extremely aggravated. His role in participating in human trafficking and the evidence that we heard from the FBI agent at the time of the trial about what that meant to the poor victims of that, those crimes themselves were aggravated." The trial court's comments demonstrate it expressly considered whether "[t]he crime involved great violence, great bodily harm . . . , or other acts disclosing a high degree of cruelty, viciousness, or callousness" and that "[t]he defendant has engaged in violent conduct that indicates a serious danger to society." (Rule 4.421(a)(1), (b)(1).) In addition, when the trial court referred to defendant shooting at an inhabited dwelling, it clearly examined whether "[t]he defendant was armed with or used a weapon at the time of the commission of the crime." (Rule 4.421(a)(2).)

9

Moreover, nothing in the record affirmatively establishes that the trial court did not consider other relevant factors it was required to consider. (Rule 4.409 ["Relevant factors enumerated in these rules must be considered by the sentencing judge, and will be deemed to have been considered unless the record affirmatively reflects otherwise"].)

Defendant nonetheless argues that the trial court abused its discretion by failing to take into account "that the present trend in felony sentencing is to acknowledge more factors which mitigate against the extremely long sentences which have been in vogue for about the last three decades." Citing *People v. Deloza* (1998) 18 Cal.4th 585, 600 (conc. opn. of Mosk, J.), defendant asserts, "one view is a sentence that no human being could conceivably complete serves no rational legislative purpose, under either a retributive or a utilitarian theory of punishment." As examples of this view "finding traction in current society," defendant points to Senate Bill No. 620, which, as noted, amended section 12022.53 to give the trial court the authority to strike in the interests of justice a firearm allegation found true; Proposition 36, which modified California's "Three Strikes" law to reduce the punishment imposed when a defendant's third felony conviction is not serious or violent (§§ 667, subd. (e)(2)(c), 1170.12, subd. (c)(2)(C), as amended by Prop. 36, §§ 2, 4, approved by the voters at Gen Elec. (Nov. 6, 2012)); Senate Bill No. 1437, which added state law to allow defendants previously convicted of murder under a felony murder or natural and probable consequences theory to petition for resentencing (Stats. 2018, ch. 1015, §§ 1, 4); and United States Supreme Court decisions, *Roper v. Simmons* (2005) 543 U.S. 551, *Graham v. Florida* (2010) 560 U.S. 48, and *Miller v. Alabama* (2012) 567 U.S. 460, which curtailed the imposition of life without the possibility of parole sentences for juvenile offenders on Eighth Amendment grounds.

Defendant admits, however, that a similar argument was rejected in *Pearson*, *supra*, 38 Cal.App.5th 112. Like defendant's contentions here, "Pearson's brief makes an eloquent and elegant argument about trends in felony sentencing generally and in California specifically. But it ignores the context in which sentencing decisions like the one at issue here will typically be made. The factors that the trial court must consider when determining whether to strike a firearm enhancement under section 12022.53, subdivision (h) are the same factors the trial court must consider when handing down a sentence in the first instance." (*Pearson*, at p. 117.) Here, defendant does not dispute that the trial court considered the factors it was required to consider when sentencing a felony defendant.

In sum, we conclude the trial court did not depart from applicable legal standards here. Denying defendant's request to strike the firearm enhancements was squarely within the bounds of the trial court's discretion.

### Remand to Allow the Trial Court to Consider Lesser Firearm Enhancements Is Not Required

Defendant also asserts the case must be remanded because the trial court failed to recognize it had the discretion to reduce the firearm enhancement under section 12022.53, subdivision (d) to the lesser-included 20-year enhancement under subdivision (c) or 10-year enhancement under subdivision (b). Again, we disagree.

Defendant relies on *Morrison*, *supra*, 34 Cal.App.5th 217, in which Division Five of this court held that the trial court has discretion to substitute a lesser-included firearm enhancement never presented to the jury as part of its discretion to "strike or dismiss an enhancement" it was "otherwise required to . . . impose[ ]" "in the interest of justice pursuant to Section 1385." (§ 12022.53, subd. (h).) (See *Morrison*, at p. 222.) Subsequent cases have disagreed with *Morrison*, and the question is now on review before

11

our Supreme Court. (See *People v. Delavega* (2021) 59 Cal.App.5th 1074, 1086–1096, review granted Apr. 14, 2021, S267293; *People v. Valles* (2020) 49 Cal.App.5th 156, 166–167, review granted July 22, 2020, S262757; *People v. Garcia* (2020) 46 Cal.App.5th 786, 788–789, review granted June 10, 2020, S261772; *People v. Yanez* (2020) 44 Cal.App.5th 452, 459–460, review granted Apr. 22, 2020, S260819; *Tirado*, *supra*, 38 Cal.App.5th at p. 644.)

We need not wade into this debate. Even if *Morrison* was correctly decided, the record does not indicate that the trial court misunderstood the scope of its discretion. The People's opposition to defendant's sentencing memorandum cited to both *Morrison* and *Tirado* to show "what options are available to the court when resentencing", and the trial court acknowledged it had read the parties' briefs. (See *People v. Bolian* (2014) 231 Cal.App.4th 1415, 1421 [remand for resentencing is not required where "the record is merely silent on whether the court misunderstood its sentencing discretion"]; *People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527 ["in light of the presumption on a silent record that the trial court is aware of the applicable law, including statutory discretion at sentencing, we cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of that discretion"]; *People v. Brown* (2007) 147 Cal.App.4th 1213, 1229 ["remand is unnecessary if the record is silent concerning whether the trial court misunderstood its sentencing discretion" because "[e]rror may not be presumed from a silent record"].)

Remand is also unnecessary because the record demonstrates that the trial court would not in any event have exercised its discretion to impose a lesser-included firearm enhancement. (See *People v. Gamble* (2008) 164 Cal.App.4th 891, 901 [" 'if the record shows that the trial court would not

12

have exercised its discretion even if it believed it could do so, then remand would be an idle act and is not required' "].)  As discussed, the trial judge determined that multiple aggravating circumstances existed and emphasized that defendant's crimes were "the most aggravated that [it] heard" in the over 32 years he has been a judge and among the 30-some murder cases he has presided over.  Notably, the trial court found the total prison term of 124 years to be "*entirely* justified" and that "the 50 years to life under 12022.53(d) consecutive *in both instances is appropriate and justified*."  These comments make clear that the trial court would not have exercised its discretion to shorten defendant's sentence by selecting lesser firearm enhancements.

## DISPOSITION

The judgment is affirmed.

                                         _____
                                         Richman, J.

We concur:


_____
Kline, P.J.


_____
Miller, J.


*People v. Spikes* (A159486)